### IN RE JOSHUA Z.*
### (9863)

DALY, O'CONNELL and NORCOTT, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2025, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 11—decision released October 15, 1991

*William Bingham,* for the appellant (respondent mother).

*Benjamin Zivyon,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Dennis Antonacci,* assistant attorney general, for the appellee (petitioner).

*Marc S. Mandell* filed a brief for the minor child.

DALY, J. At issue in this case is the termination of the parental rights of the respondent mother pursuant to General Statutes § 17a-112 (b) (2) and (4).[1] The

---

[1] General Statutes § 17a-112 provides in pertinent part: "(b) The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time,

respondent mother[2] claims (1) that the trial court improperly terminated her parental rights because there was no finding by that court that her child, Joshua Z., would be in immediate physical danger if returned to her, and (2) that the trial court's decision was not supported by clear and convincing evidence as required by § 17a-112. We disagree.

The evidence presented to the trial court revealed that Joshua was born on April 3, 1988. He has been in foster care since the age of three months. Approximately three months after the child's birth, the respondent mother experienced suicidal ideation as well as homicidal ideation concerning her child. She was diagnosed at the time of the child's birth as having a borderline personality disorder as well as other possible forms of mental illness. The respondent voluntarily placed him in foster care. After placing Joshua in foster care, she maintained minimal contact with him. The respondent failed to cooperate with the department of children and youth services (DCYS) and at times refused to disclose her address or location to DCYS. The child was adjudicated to be a neglected child on April 18, 1989, and committed to the care and custody of DCYS for a period not to exceed eighteen months.

which, except as provided in subsection (c) of this section, shall not be less than one year . . . (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child . . . . or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."

[2] Only the respondent mother has appealed. In this opinion, she will be referred to as the respondent.

In April, 1989, the respondent entered into a treatment program for her psychological problems. The respondent also gave birth to a second son on April 21, 1989. She decided to discontinue her treatment in July, 1989, against the advice of her therapist. In October, 1989, the respondent was told by DCYS that she would have to participate in counseling before Joshua could be returned to her. The respondent refused further treatment for her psychological problems.

In March, 1990, the respondent was arrested for disorderly conduct and assault on a police officer. She failed to appear for her scheduled visitation with Joshua in March, 1990. The respondent was allowed to visit with Joshua twice each month, yet she visited only four times between April and August, 1990. Even when the respondent visited with her two children, who were both under DCYS care, she virtually ignored Joshua. In fact, Joshua referred to the respondent as "that other lady." Joshua has been in the care of his current foster mother since December, 1988. Testimony revealed that Joshua appears to be a happy, outgoing and well adjusted child.

## I

The respondent claims that the trial court improperly terminated her parental rights because there was no showing that Joshua would be in "immediate physical danger" should he be returned to her. The respondent's claim is based on the reasoning of *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 287–89, 455 A.2d 1313 (1983), which upheld the constitutionality of General Statutes § 46b-129 (b). Section 46b-129 governs the assumption of temporary custody by the state. The statute allows the state to take temporary custody where "there is reasonable cause to find that the child's or youth's condition or the circumstances surrounding his care require that his custody be immediately assumed

to safeguard his welfare . . . ." General Statutes § 46b-129 (b). Our Supreme Court decided that the criteria used in determining if emergency removal of a child pursuant to General Statutes § 17a-101 (e)[3] should be allowed must also be applied when deciding if the state can take temporary custody of a child pursuant to § 46b-129 (b). *In re Juvenile Appeal (83-CD)*, supra, 289. The respondent asserts that § 17a-101 (e) criteria should also be applied to the termination of parental rights pursuant to § 17a-112. The respondent also asserts that because termination of parental rights is a more invasive action by the state than a temporary custody order, termination should not be allowed unless there has been evidence that the parental relationship constitutes a serious threat to the child's welfare.

The procedure for termination of parental rights is controlled by General Statutes § 17a-112. The termination of parental rights is "a most serious and sensitive judicial action." *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). Thus, there must be " 'strict compliance with the statutory criteria [of § 17a-112] before termination of parental rights and subsequent adoption proceedings can occur. . . .' " (Citations omitted.) *In re Juvenile Appeal (84-BC)*, 194 Conn. 252, 257 n.9, 479 A.2d 1204 (1984). There is no requirement in § 17a-112 that there must be a finding of immediate physical danger to the child before parental rights can be terminated. We decline an invitation

---

[3] General Statutes § 17a-101 (e) provides in pertinent part: "If the commissioner of children and youth services or his designee, after such investigation, has probable cause to believe that the child is suffering from serious physical illness or serious physical injury or is in immediate physical danger from his surroundings, and that immediate removal from such surroundings is necessary to insure the child's safety, the commissioner, or his designee, may authorize any employee of his department or any law enforcement officer to remove the child from such surroundings without the consent of the child's parent or guardian."

to add an additional requirement to the established statutory framework of § 17a-112.

The termination of parental rights pursuant to § 17a-112 is different from a temporary custody determination pursuant to General Statutes § 46b-129. Section 17a-112 (b) sets forth specific situations that permit the state to terminate parental rights. There is no need to apply the criteria for emergency removal pursuant to General Statutes §§ 17a-101 through 17a-112. For example, the standard of proof for each procedure is different. Termination of parental rights, because of its finality, requires clear and convincing evidence while temporary custody is governed by the lesser fair preponderance of the evidence standard. *In re Juvenile Appeal (83-CD)*, supra, 299–300. The higher standard of proof recognizes the seriousness of termination of parental rights by the state. Thus, it is unnecessary to add an additional element of proof not required by § 17a-112.

In this case, the trial court correctly applied General Statutes § 17a-112. The court found by clear and convincing evidence that for at least one year there was an absence of an "ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child . . . ." General Statutes § 17a-112 (b) (4).

Before the absence of an ongoing parent-child relationship can be the basis for terminating parental rights, the trial court must also find that "to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." Id. Such a finding was made by the trial court, which based its decision on expert testimony as to the necessity for placing Joshua in a permanent home instead of continuing foster care.

There could be no final placement of Joshua if the respondent were allowed to maintain her parental rights. Therefore, it was in Joshua's best interest to terminate the respondent's parental rights.

The second ground found by the trial court concerns the respondent's inability to rehabilitate herself in order to care properly for Joshua. General Statutes § 17a-112 (b) (2) provides for termination of parental rights where "the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child . . . ." " ' "Personal rehabilitation" . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent.' " *In re Rayna M.,* 13 Conn. App. 23, 32, 534 A.2d 897 (1987), quoting *In re Migdalia M.,* 6 Conn. App. 194, 203, 504 A.2d 533 (1986). The trial court must "analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, [determine] that such rehabilitation must be foreseeable 'within a reasonable time.' " *In re Luis C.,* 210 Conn. 157, 167, 554 A.2d 722 (1989). The trial court correctly followed this analysis in reaching its decision.

## II

The respondent next claims that there was insufficient evidence to support the termination of her parental rights. This court's duty is to ensure that "the trial court's conclusion was legally correct and factually supported." *In re Megan M.,* 24 Conn. App. 338, 342, 588 A.2d 239 (1991). " 'It is not our function to retry the case or to pass on the credibility of witnesses . . . and we will not.' " (Citations omitted.) *In re Christine F.,*

6 Conn. App. 360, 366–367, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986), quoting *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975).

There was ample evidence to support the termination of the respondent's parental rights. Joshua has been under foster care for all but three months of his life. The respondent during this period has failed to make any sustained attempt to address her psychological problems. The respondent also has failed to maintain regular visits and contact with Joshua during this period. She has refused to follow DCYS proposals aimed at reuniting her with her son. See *In re Shavoughn K.,* 13 Conn. App. 91, 534 A.2d 1243 (1987), cert. denied, 207 Conn. 805, 540 A.2d 374 (1988).

On the basis of this record, the trial court's well reasoned decision was legally correct and factually supported. The trial court properly followed § 17a-112 in determining that there was clear and convincing evidence justifying the termination of the respondent's parental rights.

The judgment is affirmed.

In this opinion the other judges concurred.