[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On June 30, 1999, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of the parents of Tanaja G.,[1] born May 18, 1998, a little girl who had been in foster care for a continuous period of 20 months prior to the date trial commenced on the petition. Tanaja's father, Michael G., was served in hand with a copy of the petition. The sheriff, after diligent efforts, filed an affidavit stating he was unable to locate Sera T., Tanaja's mother, at any of the addresses she had provided to DCF. However, Sera T. did appear in court at the plea hearing on the petition on July 27, 1999. After counsel was appointed for Sera, she waived service and indicated she wished to contest the petition. On October 21, 1999, Michael G., after being located in a Connecticut correctional institution, appeared with counsel and indicated he also wished to contest the petition. Trial commenced on the petition on February 7 and was concluded on March 28, 2000.
The petition, as last amended on February 7, 2000, alleges three CT Page 4686 statutory grounds for termination of parental rights. General Statutes §§ 17a-112 (c), in pertinent part, provides for termination if "(A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child;" "(B) the parent of a child. . . . who (1) has been found by the superior court to have been neglected or uncared for in a prior proceeding . . ., has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; and "(D) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."
Termination of parental rights proceeds in two stages: adjudication and disposition. In the adjudicatory phase, the court must determine whether the proof provides clear and convincing evidence that any one of the grounds pleaded exists to terminate parental rights as of the date of the filing of the petition or last amendment. In re JoshuaZ., 26 Conn. App. 58, 63, 597 A.2d 842 (1991), cert. denied221 Conn. 901 (1992). If at least one pleaded ground to terminate is found, the court must then consider whether the facts, as of the last day of trial, establish, by clear and convincing evidence, that termination is in the child's best interest. Procedurally, the evidence as to both issues is heard at the same trial without first determining if the state has proven a statutory ground for adjudication before consideration of the dispositional question.State v. Anonymous, 179 Conn. 155, 172-173, 425 A.2d 939 (1979); Inre Juvenile Appeal (84-BC), 194 Conn. 252, 258, 479 A.2d 1204 (1984);In re Nicolina T., 9 Conn. App. 598, 602, 520 A.2d 639, cert. denied,203 Conn. 804, 525 A.2d 519 (1987); In re Emmanuel M.,43 Conn. Sup. 108, 113, 648 A.2d 904, cert. denied 231 Conn. 915,648 A.2d 151 (1994).
 I
Factual Findings
At trial, DCF introduced the testimony of Kathleen Staunton, the DCF social worker, and Robin B., Tanaja's foster mother. Sera T. did not attend the trial. Her attorney did not introduce any testimony. CT Page 4687 Michael G. did appear and introduced his own testimony and that of his sister, Jean Rhoden. The child's attorney called no witnesses.
At the conclusion of the trial, the court indicated that it would take judicial notice of the record of the disposition in the Hartford Superior Court for Geographical Area 14 concerning the December 20, 1999 conviction of Michael G. for the sexual assault of Sera T. (A copy of the record is attached.) No one objected to the court's proposal concerning items to be judicially noticed. See In re MarkC., 28 Conn. App. 247, 251-254, 610 A.2d 181 (1992).
The credible and relevant evidence offered at trial, supports the finding of the following facts:
On June 23, 1998, a petition alleging that Tanaja G. was a neglected child was filed by DCF, along with a motion for an order of temporary custody, which was granted.
DCF had been involved with Sera T. and Michael G. since Tanaja's birth on May 18, 1998. On May 14, 1998, a Hartford police detective investigating allegations of sexual assault of Sera by Michael informed DCF that Michael, age 26, was threatening to leave the state with 16-year-old Sera and the newborn Tanaja so DCF would not get its "hands on the baby."
On May 20, 1998, Sera told DCF social worker Irene Kotaidis that she wanted no further contact with Michael. Sera was counseled to cooperate with DCF and a placement was arranged for her at the St. Agnes Family Center in Hartford, a group home for unwed teenage mothers.
On June 18, 1998, Jennifer Lusa, a social worker at St. Agnes, reported to DCF that Sera had left the program the day before with baby Tanaja without permission and had not returned until late in the evening. Sera refused to indicate where she had been and refused to talk to Kotaidis. On June 19, 1998, Sera was involved in a physical confrontation with another resident at St. Agnes and was threatened to kill her. Sera was arrested, and DCF invoked a 96-hour hold on behalf of Tanaja. St. Agnes reported that during this incident, Sera placed Tanaja at risk by jumping out of a window and locking herself in her room with the baby. On June 23, DCF obtained temporary custody of Tanaja. At the preliminary hearing on the temporary custody order, held July 2, 1998, Sera appeared with counsel and agreed to sustain the temporary custody order. Michael did not appear, nor did he appear at the noticed plea hearing date of July 23, 1998. CT Page 4688
On September 3, 1998, Sera pled no contest to the neglect allegations, and Tanaja was committed to the care and custody of DCF. On the date of the commitment, Sera agree to and signed a set of expectations in order to regain the custody of Tanaja, which the court approved. Sera agreed to keep all appointments with DCF, keep her whereabouts known to DCF and her attorney, visit the child as often as permitted, participate in parenting and individual counseling, engage in no substance abuse or criminal behavior and have no contact with Michael. Written expectations were not set for Michael because he had not appeared.
A. Mother, Sera T.
Sera T. was born on February 4, 1982 in New Zealand. After her unmarried parents separated, Sera's mother placed her in the care of authorities. Sera began showing signs of stress and sexual abuse was confirmed, although the perpetrator was never discovered. Sera came to live with an aunt in the United States on March 15, 1987. In 1989, this aunt and her husband adopted Sera through Probate Court. Sera resided with her adoptive parents until January of 1997, when she ran away from their home and requested the assistance of the Hartford police. Sera claimed she had been physically abused by her adoptive father and refused to return home. Sera was placed in the custody of DCF. In one year, she was placed in 24 different locations. She was not cooperative and there were runaway episodes.
Sera began a relationship with 26-year-old Michael sometime in June of 1997. She was fifteen. Sera stated she met Michael after running away from a placement at the Institute of Living. Michael took her in and "helped her out." After an admission to Mount Sinai Hospital Psychiatric Unit on October 4, 1997, Sera discovered she was pregnant.
Sera gave birth to Tanaja on May 18, 1998. She and the baby were immediately placed at the St. Agnes Family Center, but Sera was removed from the home due to a disturbance on June 19. On June 22, Sera, still a committed minor herself, was placed in a DCF foster home until she requested her own removal on October 19. Prior to leaving that home, Sera was offered a special study foster home for her and her daughter, Tanaja. Sera declined that placement, preferring to stay where she was. On October 19, 1998, Sera was placed in an emergency shelter, where she remained until November 15, 1998, when she was arrested and removed from the shelter. Sera was incarcerated at York Correctional Institution until December 10, 1998. During her incarceration, on November 4, 1998, Sera was interviewed for another specialized foster home which would have CT Page 4689 allowed for her placement with Tanaja. Sera declined this offer of a placement and told the worker that "DCF could keep her baby."
When Sera was released from York. she was placed in an emergency shelter at the YMCA, where she remained until February 1, 1999. Sera went AWOL from this program on two separate occasions. On January 5, 1999, Sera was accepted into the Woodstock Day Treatment Program for individual and group counseling. She was discharged from the program on February 5, 1999, after she became verbally aggressive and refused to accept services.
On February 2, 1999, Sera was released on bond in a criminal matter which allegedly involved her destroying property at one the YMCA shelter. A condition of her release was that she reside with a Marlene L. On February 17, 1999, Sera was placed, by DCF at the Bridge Youth Shelter, but she left that program the following day. Apparently she returned to the home of Marlene L. On February 29, 1999, Sera was accepted for individual counseling at Mt. Sinai. She attended only two sessions and discontinued her therapy. On March 15, Sera was referred to the Young Parent Program for classes but she never attended. On March 17, 1999, Sera left the home of Marlene L. and remained whereabouts unknown until April 4, 1999, when she was incarcerated for violating the conditions of her February 2 release.
On April 8, 1999, Sera's adoptive mother notified DCF that she had posted bond for Sera and that Sera would be returning to her home. Sera's commitment was subsequently revoked. After visiting sporadically, Sera's last known contact with her daughter occurred on July 13, 1999. On July 27, 1999, the court ordered a psychological evaluation of Sera, but she failed to attend a scheduled evaluation. She has not contacted her social worker since July of 1999. Four administrative case reviews to plan for Tanaja were held, but Sera attended only one. Although DCF recently determined Sera was incarcerated at York for a few weeks, she was discharged on February 22, 2000 and left no forwarding address. Sera T's whereabouts are unknown at this time.
B. Father, Michael G.
Michael G. was born on March 2, 1972 in Jamaica, West Indies. He came to this country several years ago.
Michael began a relationship with 15-year old Sera T. in July of 1997. He met her on the street and claims he took her in to try to help someone who was in need. His "help" included the impregnation of Sera. CT Page 4690
When Tanaja was born, Michael conferred with DCF social workers and indicated he had been refused access to Sera and the baby at St. Francis Hospital. Kotaidis, the DCF social worker initially assigned to Tanaja's case, offered to meet him at the hospital, but he declined, saying he had other things to do. He testified he knew how to contact Kotaidis and claims he spoke to her three or four times. He failed to attend any of the court hearings concerning Tanaja in June or July of 1998, although he allegedly had contact with Sera.
On August 11, 1998, Michael was arrested on charges that he sexually assaulted Sera. He pled not guilty. He was ordered to have no contact with Sera. Michael did not contact the DCF social worker again until October of 1998. He left a message on her voice mail, indicating he would call back. He did not. On April 22, 1999, the DCF social worker contacted Michael through his beeper number to advise him that an appointment for a paternity test he had requested had been scheduled. He did not keep that appointment. Michael has never visited Tanaja nor has he provided any support or sent any cards, gifts or letters to the child.
On June 6, 1999, a full year after Tanaja's birth, Michael was incarcerated while the case for the sexual assault of Sera was still pending. The reason for incarceration at that time is unclear. Paternity testing was ordered and arranged by the office of the state's attorney in July of 1999. The test determined there is a high probability Michael is Tanaja's biological father.
On October 21, 1999, Michael was transported to court from his correctional facility to enter a plea to the termination petition. He was provided with the social worker's telephone number and address. He made no request for visitation.
On December 20, 1999, Michael plead nolo contendere to the sexual assault of Sera. He received a sentence of five years, suspended after one year and three years probation. As a condition of his probation, he has to attend sex offender treatment, register as a sex offender and have no contact with the Sera.
Michael, who is not a citizen, expects to be detained by the Immigration and Naturalization Services upon his release from prison for a review, with deportation a possibility. Michael still has no plan for Tanaja that involves the assumption of any responsibility on his part. On February 16, 2000, after trial on the termination petition already had commenced, his sister, Jean R., called DCF and CT Page 4691 asked to be considered as a relative placement for Tanaja. She admitted she was aware of Tanaja's birth in May of 1998, but has never seen her. She claims Michael did not tell the family of DCF's involvement until the end of that year, but this does not excuse the lack of interest in Tanaja by her paternal relatives until February, 2000.
C. The Child and Her Progress in Foster Care
Tanaja G. was born on May 18, 1998 at Saint Francis Hospital in Hartford. Tanaja resided with Sera at the Saint Agnes Family Center upon discharge from the hospital and remained there until June 19, 1998. On June 19, 1998, a 96-hour hold was invoked on behalf of Tanaja when her mother was arrested for threatening and fighting with another resident. One-month old Tanaja was immediately placed in the foster home of Mr. and Mrs. B., where she remains to this day.
On June 23, 1998, a Motion for an Order of Temporary Custody and a neglect/uncared for petition was filed by Department of Children and Families. On June 26, 1998, an OTC was granted on behalf of Tanaja. On September 3, 1998, Tanaja was adjudicated neglected by the Superior Court for Juvenile Matters and was committed.
Tanaja is a happy, well-adjusted child who is very well taken care of in her foster home. She responds positively to her foster parents, whom she calls "mommy" and "daddy," and all of her needs are met. Tanaja is very attached to her current foster parents and the other children in the home. She displays love and affection and is responsive to their direction.
Tanaja has been diagnosed as being developmentally delayed and is receiving services from the Birth to Three Program. Her delays include fine and gross motor skills with a projective delay time frame of four to six months. The foster mother has been trained in providing additional services to help Tanaja remedy her developmental delays.
Tanaja has made wonderful progress overall. She can walk independently and she is eating more solid foods. Birth to Three will continue to work with her until she no longer requires this service, or until her third birthday.
 II ADJUDICATION
CT Page 4692
Each statutory basis set out in General Statutes § 17a-112 (c) is an independent ground for termination. In re Baby Girl B.,224 Conn. 263, 618 A.2d 1 (1992). The petitioner is required to prove one or more of the three grounds alleged in its petition by clear and convincing evidence.
A. Abandonment — C.G.S. § 17a-112 (c)(A).
This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child.
Sera's and Michael's level of commitment and responsibility toward their child has been substandard. Sera has shown no interest since July of 1999. Her visits with Tanaja were increasingly sporadic and ceased all together after July 13. She disrupted one placement that allowed her to keep custody of her baby, and subsequently rejected several hard-to-find foster home placements that would have allowed her to keep Tanaja with her. Michael never made any effort to visit Tanaja, although he was not incarcerated until one year after her birth.
There is no evidence that Sera or Michael contributed support to Tanaja since her initial placement in June of 1998. There is no evidence they have sent her cards, gifts or letters or telephoned the foster home or DCF regularly to inquire as to Tanaja's well-being. They have yet to exhibit a reasonable degree of responsibility as to her welfare. Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts and financial support are indicia of "interest, concern or responsibility." In re Migdalia M.,6 Conn. App. 194, 209, 504 A.2d 533 (1986).
 "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child' (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Citations omitted; internal quotation marks omitted." In re Kezia M., 33 Conn. App. 12, 17-18, 632 A.2d 1122 (1993); In re Roshawn R., 51 Conn. App. 44, 53 ___ A.2d ___ (1998).
Sera and Michael have fallen far short of the above standard. Sera CT Page 4693 has disappeared. Michael has actualized no plan for his life upon his release, which is imminent. He faces deportation. His professed family support has been minimal. He showed no understanding of Tanaja's history, daily activities or special needs. He simply does not know her.
Statutory abandonment on the part of Sera has been proven by clear and convincing evidence. They have not manifested a consistent, prolonged and reasonable degree of interest, concern or responsibility as to Tanaja's welfare. In re Rayna M.,13 Conn. App. 23, 37-38, 534 A.2d 897 (1987); In re Michael M.,29 Conn. App. 112, 121-123, 614 A.2d 832 (1992).
B. Failure to Rehabilitate — C.G.S. § 17a-112 (c)(B)(1).
If the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding fail to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child, grounds for termination exist.
The evidence is clear and convincing that Tanaja was adjudicated neglected and uncared for and committed to DCF on September 3, 1998.
Personal rehabilitation, as used in the statute, refers to the restoration of the parent to a constructive and useful role as a parent. In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986).
Whether the age and needs of the child do not support allowance of further time for the parent to rehabilitate must also be considered.In re Luis C., 210 Conn. 157, 167, 554 A.2d 722 (1998). Also, in determining whether further allowance of a reasonable period of time would promote rehabilitation, a court can consider efforts made since the date of the filing of the petition to terminate parental rights.In re Sarah M., 19 Conn. App. 371, 377, 562 A.2d 566 (1989).
The evidence in this case is clear and convincing that Sera and Michael, as of the date of the filing of the last amendment to the termination petition, had not achieved a reasonable degree of rehabilitation, and there is no evidence of conduct prior or subsequent to the date of the filing of the amended petition which would encourage the belief that within a reasonable period of time, considering the age and needs of Tanaja, they could assume a responsible position in his life. CT Page 4694
While a parent's compliance with expectations set after the adjudication of the neglect or uncared for case or the parent's success in fulfilling service agreements entered into with DCF are relevant to the rehabilitation finding, the fulfilling of expectations is not the dispositive issue, albeit an important consideration. In re Luis C., supra, 210 Conn. 167-168. The ultimate question is whether the parents, at the time of the filing of the termination petition or last amendment thereto are more able to resume the responsibilities of parenting than they were at the time of the commitment. In re Michael M., supra, 29 Conn. App. 126. The answer to that question is a resounding "no."
Sera's efforts at rehabilitation, and her cooperation, ceased long ago. Her whereabouts are unknown. There is nothing to persuade the court that her rehabilitation to a useful and constructive parental role is probable in a reasonable period of time. She did not fulfill a single one of the expectations to which she agreed on September 3, 1998.
Michael spent the first 18 months of Tanaja's life denying paternity and ignoring the child's existence, undoubtedly part of an effort to avoid a sexual assault conviction. He knew how to contact DCF. but made only a few calls and did not ask for visits. He never appeared in court until late October, 1999, and he failed to attend a paternity test DCF scheduled. He never attended any administrative case reviews or sought to sign expectations or a service agreement. Upon his release from incarceration, he faces possible deportation and a difficult period of probation. There is no evidence that he availed himself of any correctional programs relevant to parenting while incarcerated. His "plan" for Tanaja, placement with a relative she has never met, requires little effort on his part and shows little regard for the child's emotional well-being.
The evidence is clear and convincing that Sera and Michael have not achieved a status where they are more able to parent Tanaja than they were at the time of her initial commitment, nor is there any evidence to conclude that rehabilitation to the roles of constructive parents could be achieved by either of them within a reasonable period of time.
The court believes further delay in this case to attempt to promote more efforts at rehabilitation on the part of Sera or Michael would be severely injurious to this child, who has been in a loving foster home for almost two years. Tanaja is firmly attached to her foster parents, who wish to adopt her. The second ground alleged for termination has been established by clear and convincing evidence. CT Page 4695
C. No Ongoing Parent-Child Relationship — § 17a-112 (c)(D).
DCF also alleges that there is no ongoing parent-child relationship between Tanaja and either of her parents. To prove this ground, DCF must show the absence of "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and [that] to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." Conn. Gen. Stat. § 17a-112 (c)(3); In reSavanna M., 55 Conn. App. 807, 815 (1999). This ground encompasses a situation in which "regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displaced."In re Juvenile Appeal (Anonymous), 181 Conn. 638, 645 (1980) (internal citation omitted). The decisive question is "whether the child has no present memories or feelings for the natural parent." Id. at 646. As the Appellate Court recently noted, "the feelings of the child are of paramount importance." In re Tabitha T.,51 Conn. App. 595, 602 (1999). "Feelings for the natural parent connotes feelings of a positive nature only." Id.
Here, based on the foregoing findings and discussion, the evidence is clear and convincing that the required relationships between the child and her parents are absent. Tanaja has never seen Michael, and has not seen Sera since July of 1999. She is in a solid foster home setting and refers to her foster parents as "mommy" and "daddy".
In deciding whether it would be in the child's best interest to permit further time for a relationship with Sera and Michael to develop, the court may consider several factors. In re Savanna M.,55 Conn. App. at 816. Sera has not been heard from for a long time. In view of the extensive stay Tanaja has had with her foster family, almost her entire life, her bonded relationship with them, the lack of contact she has had with the biological parents, and the looming possibility of Michael's immigration detention and deportation, it is clearly not in her best interest to permit additional time to pass in foster care in order to allow either parent to attempt to establish a relationship with her.
 DISPOSITION
1. Reasonable Efforts Finding
CT Page 4696
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. §17a-112 (c)(1). "Reasonable efforts means doing everything reasonable, not everything possible. In re Jessica B.,50 Conn. App. 554, 566, 718 A.2d 997 (1998). However, such a finding is not required if the court previously determined that reunification efforts were no longer appropriate. General Statutes § 17a-110 (b).
The court finds by clear and convincing evidence that DCF made reasonable efforts to locate the parents and reunify them with Tanaja, both prior and subsequent to the filing of the amended termination petition. DCF's efforts were hindered by the parents' lack of cooperation, failure to keep their whereabouts known, and unwillingness to accept services or benefit from reunification efforts. Further, Michale showed no willingness to accept reunification services until after the termination petition was filed. Finally, the court, (Dyer, J.) found on July 27, 1999 that reunification efforts to reunite Tanaja with Michael were no longer appropriate.
2. Section 17a-112 (d) Criteria
The court has found by clear and convincing evidence that all of the statutory grounds alleged by the petitioner for the termination of parental rights have been proven.
Before making a decision whether or not to terminate parental rights, the court must also consider and make findings on each of the seven criteria set forth in Sec. 17a-112 (d). In re Romance M.,229 Conn. 345, 355, 641 A.2d 378 (1994).
These criteria and this court's findings, which have been established by clear and convincing evidence, are as follows:
(1) "The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent."
DCF, on 3 separate occasions, offered to place Sera and Tanaja togther. They referred Sera to prenatal care, parenting classes, counseling, and special education. They provided visitation, birth to CT Page 4697 three services, and medical and foster care for Sera and the baby. DCF's efforts were thwarted by Sera's lack of cooperation, criminal proclivities and failure to keep DCF advised of her whereabouts. For many months, DCF has not been able to locate Sera to refer her to services. Despite the social worker's early efforts to discuss issues with Michael after Tanaja's birth, he failed to maintain contact with DCF or keep his whereabouts known. His failure to take steps to determine and acknowledge paternity reveal an unwillingness on his part to accept services.
(2) "Whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the Federal Child Welfare Act of 1980, as amended."
As noted in paragraph (1) above, DCF made reasonable efforts, to the extent possible, to reunite Tanaja with her parents. As noted earlier, DCF was no longer required to make efforts toward reunification with Michael after July 27, 1999.
(3) "The terms of any court order entered into and agreed upon by any individual or agency and the parent, and the extent to which the parties have fulfilled their expectations."
No expectations were ever set by the court for Michael's reunification with Tanaja, as he did not appear at the time of her commitment, nor did he attend any administrative case reviews set for Sera. Sera never fully complied with any of the expectations she agreed to and signed on September 3, 1998.
(4) "The feelings and emotional ties of the child with respect to his parents, any guardians of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties."
Tanaja has been placed with the same foster parents since early infancy. She is attached to her foster parents and has no parental bond with her biological parents. She is exhibiting developmental delays and requires a stable, consistent, loving and permanent home, which her present foster family is willing to provide.
(5) "The age of the child."
Tanaja was born on May 18, 1998. She is presently 22 months old and has been in the care of the same foster family uninterruptedly since she was about one month old. She has spent almost her entire life CT Page 4698 with the same caretakers, who are willing to adopt her and who have demonstrated an ability to meet her needs. The federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 et. seq., as amended, mandates that after 12 months in foster care a child must have a plan for a permanent home. In re Samantha B.,45 Conn. Sup. 468, 479, ___ A.2d ___ (1998). Foster care should be a strictly limited episode in the life of a child. Tanaja has been in foster care for almost 22 months. She deserves a permanent home without further delay.
(6) "The effort the parent has made to adjust his circumstances, conduct or conditions to make it in the best interest of the child to return to his home in the foreseeable future including but not limited to (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent provided that the court may give weight to incidental visitations, communications or contributions and (b) the maintenance of regular contact or communications with the guardian or other custodian of the child."
Michael, accused of sexually assaulting Sera, failed to keep his whereabouts known to DCF for many months subsequent to the birth of Tanaja, thwarting any reunification efforts. Sera was less than cooperative with a series of offered services and placements. Both parents have been incarcerated since Tanaja's commitment, and neither has secured adequate housing or income in order to provide care for the child. There is no evidence Michael or Sera sent the child any cards, gifts or letters. They maintained no consistent contact or communication with DCF or the foster family.
(7) "The extent to which a parent has been prevented from maintaining a meaningful relationship by the unreasonable acts or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."
There is no evidence that indicates that DCF or any other person interfered with Sera's or Michael's ability to maintain a relationship with Tanaja by unreasonable acts or conduct.
There is no evidence that economic circumstances have constituted a significant factor in the parents' failure to maintain a meaningful relationship with Tanaja.
2. Best Interest of the Child
CT Page 4699
The court must now address the issue of whether the termination of parental rights is in the best interest of the child. This is the dispositional phase of a termination proceeding. In re Valerie D.,
supra, 223 Conn. 511.
Tanaja is very attached to her foster family. She has resided there since she was one month old. The B. family plans to adopt Tanaja if this petition is granted.
Sera has disappeared. Her whereabouts have remained unknown since July of 1999.
Michael has recently expressed an interest, although he has yet to successfully complete his sentence and reenter society. He may even be detained and deported upon completion of his sentence. He has no suitable home or employment arranged for himself and the child, and his status as a registered sex offender may hinder such arrangements. It is highly unlikely that he will be in a position, in a reasonable period of time, to parent Tanaja. He has yet to establish any form of bond or attachment with her.
Based upon the foregoing findings, and having considered all the exhibits and testimony, the court concludes that the evidence is clear and convincing that the best interest of Tanaja is served by the termination of her parents' right so she may be free for immediate adoption.
 CONCLUSION
The petition is granted and judgment may enter terminating Sera T.'s and Michael G's parental rights in Tanaja G. Pursuant to General Statutes Sec. 17a-112 (h), it is ordered that the commissioner of DCF be appointed statutory parent so that Tanaja can be placed for adoption. It is the court's directive that Tanaja's current foster family be given first consideration as her adoptive home. The statutory parent shall report to the court within sixty days on a case plan for Tanaja. A review plan for Tanaja shall be filed in accordance with state and federal law every six months thereafter until such time as an adoption is finalized.
KELLER, J.
[EDITORS' NOTE: THIS FORM IS ELECTRONICALLY NON-TRANSFERRABLE.]