[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On November 16, 1999, the Department of Children and Families (DCF) filed petitions to terminate the parental rights of the mother and father of Chabelie S., who was born on December 29, 1996. Chabelie has been in foster care since July 7, 1997. Erika V., Chabelie's mother, was served notice in hand. Moises S., the father, who was incarcerated in Pennsylvania at the time the petition was filed, was served notice by certified mail. Both parents appeared and were appointed counsel. Trial on the petition was held on November 6, 2000. Erika attended the trial; Moises did not.
The petition alleges two statutory grounds for termination of Moises' parental rights, abandonment and no ongoing parent-child relationship. Two grounds, failure to rehabilitate and no ongoing parent-child relationship are alleged for termination of Erika's parental rights. General Statutes §§ 17a-112(c)(3), in pertinent part, provides for termination if "(A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child;" and "(B)(1) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding . . ., has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; and (D) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or CT Page 16015 reestablishment of such parent-child relationship would be detrimental to the best interest of the child."
Termination of parental rights proceeds in two stages: adjudication and disposition. In the adjudicatory phase, the court must determine whether the proof provides clear and convincing evidence that any one of the grounds pleaded exists to terminate parental rights as of the date of the filing of the petition or last amendment. In re Joshua Z.,26 Conn. App. 58, 63, 597 A.2d 842 (1991), cert. denied, 221 Conn. 901
(1992). If at least one pleaded ground to terminate is found, the court must then consider whether the facts, as of the last day of trial, establish, by clear and convincing evidence, that termination is in the child's best interest. Procedurally, the evidence as to both issues is heard at the same trial without first determining if the state has proven a statutory ground for adjudication before consideration of the dispositional question. State v. Anonymous, 179 Conn. 155, 172-173,425 A.2d 939 (1979); In re Juvenile Appeal (84-BC), 194 Conn. 252, 258,479 A.2d 1204 (1984); In re Nicolina T., 9 Conn. App. 598, 602,520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987); In reEmmanuel M., 43 Conn. Sup. 108, 113, 648 A.2d 904, cert. denied231 Conn. 915, 648 A.2d 151 (1994).
For the reasons stated below, the court grants the petition for termination of parental rights.
 I FACTUAL FINDINGS
At trial, DCF introduced 5 exhibits and the testimony of the assigned social worker, Nilza Santana. Erika V. testified but introduced no exhibits. Moises S. presented no witnesses, but introduced two exhibits. The child's attorney called no witnesses and submitted no exhibits.
The credible and relevant evidence offered at trial, and a review of the judicially noticed court records, supports the finding of the following facts:
A. Case History
On May 21, 1997, neglect petitions were filed by DCF on behalf of Chabelie and her two siblings, Joshua V. and Fabian R.[1] Chabelie's petition alleged that she was being denied proper care and attention, physically, educationally, emotionally and morally; permitted to live under conditions, circumstances or associations injurious to her well-being; and abused. On June 27, 1997. DCF invoked a 96 hour hold on CT Page 16016 behalf of Chabelie and an order of temporary custody was granted on July 1, 1997. The court adjudicated Chabelie neglected and committed her to the custody of DCF on October 9, 1997. On September 24, 1998 and September 14, 1999, the court granted extensions of her commitment. On November 16, 1999, DCF filed the petition to terminate parental rights.
DCF initially became involved with Erika and her children in September of 1996. The presenting problems were physical and emotional abuse of Fabian, neglect of Fabian and Chabelie, homelessness and substance abuse. Santana, the DCF social worker, was assigned to the case in October of 1996. Erika was then pregnant with Chabelie. Fabian was living with her, and a case was opened due to physical abuse of him. Joshua was living with his maternal grandmother, who had always taken care of him because Erika was only 16 when she gave birth to him. Initially, Santana had difficult locating Erika after being assigned the case. The first address given to her was an abandoned building. Santana left messages with Erika's relatives in order to locate her. Erika eventually called Sanchez and gave her an address on Garden Street, where they finally met to discuss her case on December 12, 1996, just a few weeks before Chabelie's birth. Santana offered Erika a number of services to preserve Chabelie and Fabian in her home, including a referral for a substance abuse evaluation and a parent aide. Erika missed the first substance abuse evaluation. When Santana and the parent aide went to Erika's home for the parent aide's first visit, Erika had moved again, leaving no forwarding address. Eventually, Erika called Santana to say she was living on Hamilton Street.
Santana again referred Erika to a parent aide and a substance abuse evaluation, and added a referral for individual counseling. Erika missed the substance abuse evaluation, and the parent aide terminated her services because Erika was not cooperative. Erika would be asleep or have too many people in the home when the aide, Carmen Freemen of the St. Francis parent aide program, visited. Erika started to attend individual counseling at the Village for Families and Children, but the counseling was terminated after only 5 sessions because the therapist felt she could not engage Erika, who did not talk or refused to address issues during counseling sessions.
In late June of 1997, with little progress on the attempted preservation efforts, DCF had to remove Chabelie, Joshua and Fabian. Erika had moved in with her mother, and conditions were overcrowded. A referral was received reporting that the boys, ages 4 and 3, were begging for food and playing outside unsupervised. The DCF investigator found no food in the home and DCF obtained temporary custody in July of 1997.
B. Mother, Erika V.
CT Page 16017
Erika V. was born on July 23, 1975 in Fajardo, Puerto Rico. She is the sixth of nine children. She has resided in the Hartford area for about six years. Erika attended school until the eleventh grade and subsequently obtained a GED through a Hartford adult education program. Her past history of employment is minimal. She has worked as a cashier and a security person. Erika has never married but has four illegitimate children by four different men. She suffers from heart trouble.
On October 9, 1997, Erika signed a set of expectations for reunification with her children, which the court accepted. Erika agreed to keep all appointments with DCF and her attorney and keep her whereabouts known to both; visit the children as often as permitted; participate in parenting, individual, and drug/alcohol evaluation; secure and maintain adequate housing and income; and not engage in any further substance abuse or criminal behavior.
After these expectations were signed, Santana made new referrals for parenting classes to the Institute for Hispanic Family and a substance abuse evaluation at ADRC in Hartford. Erika also was referred back to the Village and to the Institute of Living for individual counseling, where she was placed on a waiting list. Erika became more compliant with some of her expectations after Chabelie and her two other children were committed, although she continued to be homeless and moved around, living with friends. She was consistent in visiting the children. She completed her parenting classes by the end of 1998 and had begun counseling at Mi Casa. Encouraged by Erika's progress, Santana referred her to the intensive parental reunification program at Catholic Family Services. Erika had attended the intake appointment and the first two sessions when she was arrested in connection with the alleged homicide of a police officer in East Hartford, Connecticut on January 23, 1999. At the time of her arrest, Erika was pregnant with her fourth child, Tatiana C.[2] She has been incarcerated at York since January of 1999. Erika is facing a number of charges, including felony murder, but was allowed to plead guilty to burglary in the first degree and attempted larceny in the third degree on March 9, 1999. Her plea agreement includes her promise that she will testify against the 3 other defendants charged in connection with the January 23, 1999 incident, at least one of whom may be tried on capitol felony charges. If she fully cooperates, her sentencing will take place after the disposition by plea or trial of the other defendants' cases, and her other outstanding charges will be nolled. The state's attorney did not commit to any specific sentence recommendation as part of this plea agreement. Erika admitted she could be sentenced to as much as ten years. In all likelihood, the disposition of the other cases will take many more months. None of the trials were reported scheduled for any date certain. CT Page 16018
C. Father. Moises S.
Moises was born on November 5, 1973 in New York City. He has never been actively involved in Chabelie's life, and only visited her three times since she was removed from her mother's care. Just prior to Chabelie's removal, he was arrested on federal charges, for which he ultimately was incarcerated for thirty months. While in prison, he did attend and complete a few programs, some of which arguably would be relevant to parenting. However, he made little effort to contact DCF or inquire about Chabelie's well-being while in prison, nor did he send her any cards, gifts or letters. Although the trial was continued at his request to enable his physical attendance subsequent to his release from incarceration, he did not appear on November 6 and gave no reason for his absence.
Moises has not requested any contact with Chabelie since his release. He was elusive about his address when Chabelie was first placed, and recently he refused to tell DCF where he is residing. He told DCF to contact him at his mother's in Hartford because he was living with a girlfriend who didn't know about Chabelie. Although he has suggested the child be placed with paternal relatives, he has never seriously presented a plan for her that includes his assuming the responsibilities one would expect from a caring father.
D. Chabelie S.
Chabelie S. is nearly four years old. She was born on December 29, 1996, after DCF became involved with Erika and her two older children. She was removed from her mother in July of 1997, and has been in foster care since she was seven months old. Presently, she is thriving in the loving home of Linda and Neal G., with whom she has a strong parental bond. The G.s wish to adopt Chabelie. She is very affectionate with them and calls them "mommy" and "daddy". She last saw her father in May of 1998, so no connection with him has been maintained.
Chabelie has been transported to York once a month for visits with Erika since January of 1999. Erika has had gifts for the child during some visits. During visit, Chabelie initially shies away and does not engage with Erika as a child would with a parent. She does not seek affection from her. She calls her mother "Erika."
 II ADJUDICATION
CT Page 16019
Each statutory basis set out in General Statutes § 17a-112(c) is an independent ground for termination. In re Baby Girl B., 224 Conn. 263,618 A.2d 1 (1992). The petitioner is required to prove one or more of the grounds alleged as to each parent in its petition by clear and convincing evidence.
A. Reasonable Efforts Finding
Unless a court has found in an earlier proceeding that efforts to reunify are no longer appropriate. DCF, in order to terminate parental rights, initially must show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. Sec. 17a-112(c)(1). "Reasonable efforts means doing everything reasonable, not everything possible." In re Jessica B.,50 Conn. App. 554, 566, 718 A.2d 997 (1998).
On September 14, 1999, the court (McMahon, J.) found reunifications efforts were no longer appropriate for either Erika or Moises.
Prior to September 14, 1999, with the assistance of counsel, Erika signed a form setting forth what was expected of her in order to regain custody of her children on October 9, 1997. These expectations were accepted and approved by the court at the time of the her children's commitments. The efforts DCF made to reunify the family and Erika's level of compliance with these expectations is fully discussed on pages four through six of this decision. Her continuing poor judgment resulted in her arrest and incarceration in January of 1999.
The court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Erika with Chabelie prior to the court's finding that efforts were no longer appropriate. Moises was unable or unwilling to benefit from reunification efforts prior to that same finding.
DCF's efforts were hindered by the parents' lack of cooperation, their own voluntary criminal behavior, and Moises' failure to keep DCF advised of his whereabouts and his incarceration.
B. Abandonment — C.G.S. § 17a-112(c)(A).
This ground, alleged as to the father, Moises, is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child. CT Page 16020
Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts and financial support are indicia of "interest, concern or responsibility." In re Migdalia M., 6 Conn. App. 194, 209,504 A.2d 533 (1986).
 "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Citations omitted; internal quotation marks omitted." In re Kezia M., 33 Conn. App. 12, 17-18, 632 A.2d 1122
(1993); In re Roshawn R., 51 Conn. App. 44, 53, 720 A.2d 1112 (1998).
It is indisputable that Moises has fallen far short of the above standards for exhibiting interest, concern or responsibility. He was incarcerated in a federal prison in Pennsylvania on July 24, 1998 after pleading guilty to being a felon in possession of a firearm, an offense committed on June 15, 1997. Although incarceration does not conclusively prove abandonment, he was not incarcerated at the beginning of the neglect case in 1997. However, he did not appear at the time of the adjudication and disposition on the neglect petition, and never sought to sign expectations. In fact, he indicated to DCF that he could not offer himself as a caretaker for his daughter. Moises has sent Chabelie no cards or gifts, nor has he made phone calls to DCF or the foster home to inquire as to her well-being. He never contributed any financial support. Although offered weekly visits after Chabelie was placed, Moises only visited her three times prior to his incarceration and has not seen her since May 6, 1998. He never notified DCF of his incarceration in Pennsylvania; the social worker located him subsequent to Erika's arrest in January of 1999. After demanding numerous continuances while incarcerated so special arrangements could be made to assist in his defense of the termination petition, Moises never appeared for trial after it was continued to a date which followed his release and return to residence in Hartford. Moises efforts, such as they were, fail even to minimally fulfill any of the general obligations of parenthood.
Statutory abandonment on the part of Moises has been proven by clear and convincing evidence. He has not manifested a consistent, prolonged and reasonable degree of interest, concern or responsibility as to Chabelie's welfare. In re Rayna M., 13 Conn. App. 23, 37-38, 534 A.2d 897
CT Page 16021 (1987); In re Michael M., 29 Conn. App. 112, 121-123, 614 A.2d 832
(1992).
C. Failure to Rehabilitate — C.G.S. § 17a-112(c)(B).
This is one ground for termination alleged against Erika. If the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding fails to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child, grounds for termination exist.
The evidence is clear and convincing that Chabelie was adjudicated neglected and committed to DCF on October 9, 1997.
Personal rehabilitation, as used in the statute, refers to the restoration of the parent to a constructive and useful role as a parent.In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986).
Whether the age and needs of the child do not support allowance of further time for the parent to rehabilitate must also be considered. Inre Luis C., 210 Conn. 157, 167, 554 A.2d 722 (1989). Also, in determining whether further allowance of a reasonable period of time would promote rehabilitation, a court can consider efforts made since the date of the filing of the petition to terminate parental rights. In re Sarah M.,19 Conn. App. 371, 377, 562 A.2d 566 (1989).
The evidence in this case is clear and convincing that Erika, as of the date of the filing of the termination petitions on November 16, 1999 had not achieved a reasonable degree of rehabilitation, and there is no evidence of conduct prior or subsequent to the date of the filing of the petition which would encourage the belief that within a reasonable period of time, considering the age and needs of her daughter, she could assume a responsible position in her life.
A parent's compliance with expectations set after the adjudication of the neglect case, or the parent's success in fulfilling service agreements entered into with DCF are a relevant and important consideration in reaching a rehabilitation finding. In re Luis C., supra, 210 Conn. 167-168. The ultimate question is whether the parent at the time of the filing of the termination petition is more able to resume the responsibilities of parenting than they the parent was at the time of the commitment. In re Michael M., supra, 29 Conn. App. 126.
On pages 4 through 6, this decision reviews the attempts the court and CT Page 16022 DCF made to advise Erika what would be expected of her in order to have her children returned to her care, DCF's efforts to provide services, and the extent of Erika's compliance. Crucial to this decision is her prolonged and continuing incarceration for an indeterminate period.
The evidence is clear and convincing that Yolanda has not achieved a status where she is more able to parent Chabelie than she was at the time of her initial commitment. In fact, she is in a worse position now than she was in October of 1997. Further, there is no evidence to conclude that rehabilitation into the role of a constructive parent could be achieved within a reasonable period of time.
Further delay in this case in an attempt to succeed at rehabilitating Erika would be injurious to Chabelie. After two and a half years of foster care, she is securely attached to her foster parents, who are willing to provide her with a permanent, stable and loving home.
The ground of failure to rehabilitate, alleged for termination of Erika's parental rights. has been established by clear and convincing evidence.
D. No Ongoing Parent-Child Relationship
This is the second ground alleged against both Erika and Moises. To prove this ground, DCF must show the absence of "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and [that] to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." Conn. Gen. Stat. § 172-112(c)(3)(D); In reSavanna M., 55 Conn. App. 807, 815 (1999). This ground encompasses a situation in which "regardless of fault, a child either has never know his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displaced." In re JuvenileAppeal (Anonymous) 181 Conn. 638, 645 (1980) (internal citation omitted). The decisive question is whether the child has present memories or feelings of a positive nature for the natural parent. In re Tabitha T.,51 Conn. App. 595, 602 (1999).
In this case, the evidence is clear and convincing that the required relationship between Chabelie and her biological parents is absent. Chabelie has been in foster care since June of 1997, when she was only six months old, a period of nearly two and a half years. Moises visited her only three times, and has not seen or had any meaningful contact with his child since May of 1998. He has contributed nothing to her physical, CT Page 16023 emotional, moral or educational development for a significant period of time. Chabelie would likely not recognize him if she saw him.
In deciding whether it would be in the child's best interest to permit further time for a relationship with her parents to redevelop, the court may consider several factors. In re Savanna M., 55 Conn. App. at 816. In light of the inordinate amount of time Chabelie has spent in foster the almost complete lack of contact she has had with Moises, and the lack of any positive relationship between them, it is clearly not in her best interests to permit additional time to pass in foster care in order to allow Moises, whose considerable disinterest has not abated, to attempt to establish a relationship. To the contrary, the evidence is clear that Moises has no ability to or interest in doing so.
Visits observed by DCF at York indicate that Chabelie knows Erika, but she does not display the kind of attachment toward her one expects to see from a child toward a parent. Chabelie looks to her foster parents for love and guidance and is securely bonded to them. Whatever maternal bond may have been developed with Erika during her infancy has been displaced completely. Chabelie calls her foster parents "mommy" and "daddy." She calls her biological mother, "Erika." Given the indeterminate status of Erika's incarceration, to permit further time for the reformation of a parent child relationship is clearly not in her best interest.
 DISPOSITION
1. Section 17a-112(d) Criteria
The court has found by clear and convincing evidence that all of the statutory grounds alleged by the petitioner for the termination of parental rights have been proven.
Before making a decision whether or not to terminate Erika's and Moises' parental rights, the court must also consider and make findings on each of the seven criteria set forth in Sec. 17a-112(d). In re RomanceM., 229 Conn. 345, 355, 641 A.2d 378 (1994).
These criteria and this court's findings, which have been established by clear and convincing evidence, are as follows:
(1) "The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent."
DCF offered timely and appropriate services, to the extent possible, to facilitate reunification. The nature and extent of DCF efforts to engage CT Page 16024 both parents has been more fully discussed at pages 4 through 7 of this decision. DCF's efforts were thwarted thoroughly by the parents' lack of interest and cooperation and Their lengthy incarcerations, which occurred subsequent to DCF's involvement with the family.
(2) "Whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the Federal Child Welfare Act of 1980, as amended."
As noted in paragraph (1) above, DCF made reasonable efforts, to the extent possible, to reunite Chabelie with her parents. On September 14, 1999, the court found that efforts toward reunification were no longer appropriate as to either parent.
(3) "The terms of any court order entered into and agreed upon by any individual or agency and the parent, and the extent to which the parties have fulfilled their expectations."
Expectations were entered into and approved by the court for Erika at the time of the order of Chabelie's commitment on October 9, 1997. Moises did not attend court at the time of the initial commitment, nor did he ever request that expectations be set for him, despite the fact that he was represented by counsel. Erika was slowly complying with her expectations, as more fully discussed on pages 4 through 6 of this decision, until her arrest and incarceration halted all of her belated progress toward reunification.
(4) "The feelings and emotional ties of the child with respect to his parents, any guardians of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties." The federal Adoption Assistance and Child Welfare Act of 1980,42 U.S.C. § 670 et. seq., as amended, mandates that after 12 months in foster care a child must have a plan for a permanent home. In reSamantha B., 45 Conn. Sup. 468, 479, 721 A.2d 1255 (1998). Foster care should be a strictly limited episode in the life of a child. Chabelie is securely attached to the G. foster family, where she has been placed for two years. Two years is a long time in the life of a young child, and a parental bond has been formed with this couple, who wish to adopt Chabelie. Chabelie has no parent child relationship with Moises or Erika. She has not seen her father since the spring of 1998. Monthly visits at the jail with her mother, who has been unable to provide her very young daughter with any day-to-day care or guidance, have not allowed for the maintenance of a parent child relationship between the two. CT Page 16025
(5) "The age of the child."
Chabelie, born on December 29, 1996, is nearly 4.
(6) "The effort the parent has made to adjust his circumstances, conduct or conditions to make it in the best interest of the child to return to his home in the foreseeable future including but not limiTed to (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child."
The parents have made little effort to adjust their circumstances, conduct or conditions to make it in the best interest of Chabelie to return home in the foreseeable future. Moises has failed to maintain regular contact with his child, DCF or the foster home. He has not contributed any gifts or money toward his daughter's support; and he did not send her any cards or letters. In rendering this decision on the grounds alleged for termination, this court found that the derelict conduct of Moises constituted statutory abandonment of Chabelie. Erika did maintain contact with Chabelie and brought her gifts during visits. She was slowly making progress toward reunification until she exercised the poor judgment she has exhibited in the past and involved herself in criminal conduct. It should be noted that on the day she was involved with the incident that led to her arrest, she was pregnant with a fourth illegitimate child even though her three older children had been removed because she could not care for them properly.
(7) "The extent to which a parent has been prevented from maintaining a meaningful relationship by the unreasonable acts or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."
There is no evidence that indicates that DCF or any other person interfered with either parent's ability to maintain a relationship with Chabelie by unreasonable acts or conduct. Indeed, it is their own poor judgment and criminal involvement that interfered with their relationship with their daughter. There is no evidence that economic circumstances have constituted a significant factor in either parent's failure to maintain a meaningful relationship with the children.
2. Best Interests of the Children
The court must now address the issue of whether the termination of parental rights is in the best interests of the child. This is the CT Page 16026 dispositional phase of a termination proceeding. In re Valerie D., supra, 223 Conn. 511.
With a statutorily mandated twelve month limit prior to the institution of a permanency plan, a period of two and a half years is entirely unacceptable. Chabelie's lack of permanency and the effects of that uncertainty no longer can be tolerated. She is old enough to be cognizant of her attachments to her foster parents and to be greatly affected by any perceived threat of its severance. Chabelie's best interest will be served by allowing her foster family to adopt her and thus provide her with a permanent and stable home.
Based upon the foregoing findings, and having considered all the exhibits and testimony, the court concludes that the evidence is clear and convincing that the best interest of Chabelie is served by the termination of her mother's and father's parental rights so she may be free for adoption. The court notes that counsel for the child fully supports this result as in the best interests of the child.
 CONCLUSION
The petition is granted and judgment may enter terminating Erika V.'s and Moises S.'s parental rights in Chabelie S. Pursuant to General Statutes Sec. 17a-112(h), it is ordered that the commissioner of DCF be appointed statutory parent so that the Chabelie can be placed for adoption. In securing an adoption, the court urges DCF to give first preference to the present foster family, who have lovingly cared for Chabelie for two years.
The statutory parent will file a written report with the court on or before January 4, 2001 at 9:00 A.M. on a plan for Chabelie, and an in court review of the plan will be held on May 31, 2001 at 12:00 P.M. Additional plans will be filed in accordance with state and federal law at least every six months until such time as adoption is finalized.
KELLER, J.