## In re Juvenile Appeal (84–BC)*
## (11964)

Speziale, C. J., Peters, Healey, Parskey and Shea, Js.

Argued June 5—decision released August 14, 1984

*John C. Kucej,* for the appellant (mother of the minor child).

*Judith M. Earl,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (state).

*William F. Hickey III,* for the minor child.

Parskey, J. In a decision dated December 20, 1982, following a hearing held on December 15, 1982, the trial court granted the state's petition to terminate the defendant's parental rights with respect to her son pur-

*In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 1092, the names of the parties involved in this appeal are not disclosed and the records and briefs will not be distributed to the various libraries of the state. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

suant to General Statutes § 17-43a (a).[1] The defendant mother[2] appeals this decision on constitutional grounds, claiming that two of the three statutory provisions under which her parental rights were terminated violate the due process and equal protection clauses of the fourteenth amendment to the United State constitution.[3] We find no error.

On a previous occasion the trial court terminated the defendant's parental rights under subsections (2) and (4) of § 17-43a (a). On appeal to this court we reversed

---

[1] "[General Statutes] Sec. 17-43a. TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. (a) In respect to any child committed to the commissioner of children and youth services . . . the commissioner . . . may petition the court for the termination of parental rights with reference to such child . . . . The superior court upon hearing and notice . . . may grant such petition if it finds upon clear and convincing evidence, that over an extended period of time, which, except as hereinafter provided in this subsection, shall not be less than one year: (1) The parents have abandoned the child in the sense that they have failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare; or (2) the parents have failed to achieve any such degree of personal rehabilitation as would reasonably encourage the belief that at some future date they could assume a responsible position in their child's life; or . . . (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

The statute alternatively provides for termination of parental rights if the parents consent or if the parents, because of continuing physical or mental deficiency, will be unable to provide the child with necessary care, guidance and control. Neither of these alternate grounds has been alleged against the defendant, and therefore neither is discussed in this case.

[2] The father of the defendant's child is dead.

[3] The defendant raises a second ground for appeal based on an evidentiary error. She contends that testimony concerning her intelligence quotient, admitted at the hearing, was not competent evidence and should have been excluded because its prejudicial potential outweighed its probative value. At trial, the defendant neither objected to nor moved to strike this testimony, and thus failed to preserve her claim of error for appeal. Therefore, we do not consider this question as it is not properly before us. Practice Book § 3063.

the judgment of the court below because the trial court had improperly permitted the child's foster parents to intervene as parties. *In re Juvenile Appeal (Docket No. 10718),* 188 Conn. 259, 449 A.2d 165 (1982).

The record reveals the following facts. The defendant, A, gave birth to her son J on February 7, 1974. At that time, she was a fifteen-year-old delinquent child living at Long Lane School in the custody of the commissioner of children and youth services. On March 6, 1974, the Juvenile Court, second district, found that J was "uncared for" because his mother was unable to provide a home for him. Consequently, J was committed to the care and custody of the commissioner of children and youth services.

On August 8, 1974, J was placed in the P foster home in New Milford where he has since remained. A has resided primarily in Waterbury, approximately thirty-five miles from New Milford, near other members of her family. A has visited her son over the years, but these visits were limited in length and number. She has tried to regain custody of J repeatedly, but each of her five motions to review commitment, brought between March 25, 1975, and the 1982 termination proceeding, was denied after hearings and professional evaluations of J and his mother.

A has had three more children since J was born. At the time of the termination hearing, one of her daughters had been removed by court order while the other two children remained in A's care. The trial court found that A had not been able to maintain a clean, warm, nutritious home for her children, as indicated by several utility shut-offs.

J was found to have adjusted positively to the P foster home and was doing well in school. Testimony of child psychologists, adopted by the court in its factual findings, indicated that removing J from the P home

and placing him in A's care would be emotionally destructive to J. There was also evidence that A's visits with J caused him to have bad dreams and wet his bed.

On the basis of its findings of fact, the trial court concluded that A lacked "the emotional stability, the maturity, the understanding or ability to be able to be a parent to J." The court found that by clear and convincing evidence the state had proven the allegations of its petition to terminate A's parental rights in J. Consequently, the court terminated A's parental rights pursuant to General Statutes § 17-43a on the following grounds: "(1) The parent has abandoned the child in the sense that she has failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare. (2) Mother has failed to achieve any such degree of personal rehabilitation that should reasonably encourage the belief that at some future date she could assume a responsible position in her child's life. (3) There is no on-going parent/child relationship . . . that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child, and to allow further time for the establishment of such parent/child relationship would be detrimental to the best interest[s] of the child."

The defendant challenges the constitutionality of § 17-43a (a) (1) and (4)[4] by claiming a violation of her rights under the due process and equal protection clauses of the fourteenth amendment to the United States constitution. These claims arise out of the first and third of the trial court's grounds for termination. She asserts that by assuming custody of J and placing him in a foster home thirty-five miles away with a

---

[4] See footnote 1, supra. For the sake of convenience, we will refer to subsection (1) of General Statutes § 17-43a (a) as "abandonment," subsection (2) as "failure to rehabilitate," and subsection (4) as "no ongoing parent-child relationship."

family that is linguistically and culturally foreign,[5] the state created or substantially caused the very conditions upon which it later grounded the termination of her parental rights.[6]

As to subsection (1), she asserts that termination of parental rights for abandonment is only proper where a parent has voluntarily deserted her child, and not in cases where the state has assumed custody against the parent's wishes. With regard to subsection (4), authorizing termination upon a showing of no ongoing parent-child relationship, the defendant argues that the state has prevented or substantially hindered the development of such a relationship between her and J, and has failed in its duty to preserve her parental ties to J.[7] In essence, the defendant maintains that unless the statutory criteria for termination under subsection (4) are read in the context of what is possible for the individual parent in light of the state's actions and the facts and circumstances of her particular case, that provision violates the due process clause. The defendant also

[5] The defendant is "of Spanish descent and background and experiences difficulty with the English language." She required an interpreter at the termination hearing. In response to questions posed by the court, Mr. P, J's foster parent, testified that neither he nor his wife spoke Spanish, and that J lacked any conversational skills in his mother's native tongue. The defendant's equal protection claim does not include the argument that the statute is discriminatory in its application to a suspect class based on ethnic origin in violation of the equal protection clause.

[6] We have never decided whether it is constitutionally permissible to terminate an individual's parental rights when the state is largely or solely responsible for the existence of the grounds upon which the termination is based. We reserve that question for another day.

[7] This court has declared that "[t]he public policy of this state is *to strengthen the family* and to make the home safe for children *by enhancing the parental capacity for good child care;* [and] to provide a temporary or permanent nurturing and safe environment for children *when necessary.'* . . . (Emphasis added.)" *In re Juvenile Appeal (Anonymous),* 177 Conn. 648, 660, 420 A.2d 875 (1979).

claims that the application of subsection (4) has a disparate impact on a class of poor parents in violation of the equal protection clause.

The defendant has not attacked the sufficiency of the evidence supporting the trial court's findings of abandonment and no ongoing parent-child relationship.[8] She merely asserts that if the facts as found by the trial court satisfy the statutory criteria of § 17-43a (a) (1) and (4), those provisions are not constitutional. Although the defendant has raised important questions concerning the constitutionality of this statute,[9] we are constrained by the limits of her argument and cannot reach her constitutional claims.

The defendant has not alleged that there was insufficient evidence to find the ground of failure to rehabilitate under § 17-43a (a) (2). Nor has she attacked the constitutional validity of that provision as applied to

---

[8] We do not mean to imply by our decision today that there was in fact sufficient evidence to support the termination of the defendant's parental rights on grounds of either abandonment or no ongoing parent-child relationship.

[9] "The termination of parental rights is defined as 'the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . .' General Statutes § 45-61b (g). It is 'a most serious and sensitive judicial action.' *Anonymous* v. *Norton,* 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). 'Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 [1972]; see *In re Appeal of Kindis,* 162 Conn. 239, 240, 294 A.2d 316 [1972]; *Cinque* v. *Boyd,* [99 Conn. 70, 82, 121 A. 678 (1923)].' *Anonymous* v. *Norton,* supra, 425." *In re Juvenile Appeal (Anonymous),* 177 Conn. 648, 671, 420 A.2d 875 (1979). This court has "[i]nsist[ed] upon strict compliance with the statutory criteria [of § 17-43a] before termination of parental rights and subsequent adoption proceedings can occur . . . ." Id., 672. In assessing the constitutionality of another statutory provision authorizing state intrusion into the area of parental rights, we recognized the fundamental nature of these rights and applied the strictest level of judicial scrutiny. *In re Juvenile Appeal (83-CD),* 189 Conn. 276, 284-85, 455 A.2d 1313 (1983).

the facts as found in her case. In a petition to terminate parental rights under § 17-43a, the petitioner must list the grounds relied upon and, if any one of these grounds may be upheld, the order to terminate must stand. *In re Juvenile Appeal (83–BC)*, 189 Conn. 66, 69, 454 A.2d 1262 (1983) (where a mother claimed there was insufficient evidence to terminate her rights on either of two grounds under § 17-43a (a), our conclusion that one of the grounds was supported by the evidence made it unnecessary to consider whether the second ground was supported). Since the defendant leaves unchallenged one of the statutory bases on which the trial court terminated her parental rights, we do not decide the constitutional issues she has raised in connection with the other two grounds.

There is no error.

In this opinion the other judges concurred.