[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
FINDINGS RE: PETITION FOR TERMINATION OF PARENTAL RIGHTS
The child's date of birth is December 19, 1988; she was committed to the care and custody of the Commissioner of the Department of Children and Youth Services (DCYS) as an uncared or/specialized needs child on September 21, 1989.[1]
The mother of the child is Michelle S., date of birth September 5, 1966; the father is Donald P., date of birth June 12, 1964.[2]
The instant petition to terminate parental rights was filed November 6, 1991; petitioner's motion to amend the petition was granted on May 7, 1992. With respect to respondent/mother, the petition, as amended, alleges statutory grounds for termination under General Statutes Section 17a-112 (formerly Section 17-43a)(b) (1) (Abandonment), (2) (Failure to Rehabilitate), and (4) (No Ongoing Parent-Child Relationship), As to respondent/father, the petition, as amended, alleges grounds under Section 17a-112(b)(1)(Abandonment), and (4) (No Ongoing Parent-Child Relationship).
Notice And Jurisdiction CT Page 7871
Michelle S.'s address is shown on the termination petition as 90 Hampton Street, Apt. 203, Hartford. The return of service annexed to the termination petition indicates in-hand service on respondent/mother. Respondent/father is shown on the termination petition as Donald P., "whereabouts unknown." Pursuant to the court's order of notice, publication was effected through legal advertisement in The Hartford Courant on November 19, 1991. On December 2, 1991, service of the termination petition was confirmed by the court, on the record, as follows: "mother in hand; father by publication."
Neither respondent/mother nor respondent/father appeared for trial, or were present for any court proceedings regarding the termination of their parental rights.
The court finds that service has been effectuated in accordance with the requirements of law, and that this court has jurisdiction to hear and adjudicate this termination petition. General Statutes Sections 17a-112, 45a-716, and45a-717.
Standard of Proof
The term "termination of parental rights" is statutorily defined as "the complete severance by court order of the legal relationship with all its rights and responsibilities, between the child and his parent or parents so that the child is free for adoption except that it shall not affect the right of inheritance of the child or the religious affiliation of the child." General Statutes Section45a-707 (g). It is a judicial matter of exceptional gravity and sensitivity. Anonymous v. Norton, 168 Conn. 421, 430
(1975). Termination of parental rights is the ultimate interference by the state in the parent-child relationship and, although such judicial action may be required under certain circumstances, the natural rights of the parents in their children "undeniably warrants deference and, absent a powerful countervailing interest, protection." Stanley v. Illinois, 405 U.S. 645, 651 (1972); In Re Juvenile Appeal (Anonymous), 177 Conn. 648, 671 (1979).
The integrity of the family unit is protected by theNinth Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. Stanley v. Illinois, supra. Both the child and the parent(s) have constitutionally protected interests in the integrity of the family. Santosky v. Kramer,455 U.S. 75 (1982). And, the "rights of parents qua parents to CT Page 7872 the custody of their children is an important principle that has constitutional dimensions." See: e.g. In Re Juvenile Appeal (84-3), 1 Conn. App. 463 (1984).
Termination of parental rights is in two stages: the adjudication and the disposition. The adjudicatory stage involves the issue of whether the evidence presented established the existence of one or more of the statutory grounds as of the date the petition was filed. In Re Juvenile Appeal (840AB), 192 254, 262 (1984); In Re Nicolina T.,9 Conn. App. 598, 602 (1987); In Re Luke G.,40 Conn. Sup. 316, 324 (1985). Only upon establishment of one or more of the statutory grounds may inquiry be made regarding the ultimate best interests of the child. In Re Juvenile Appeal (84-AB), supra at p. 262. However, since Section 17a-112 (b) sets forth the statutory grounds for termination in the disjunctive, one ground only need be established for the granting of the petition. In Re Juvenile Appeal (84-BC),194 Conn. 252m 258 (1984); In Re Nicolina T., supra.
Factual Findings
Sharonda S. was born on December 19, 1988 at Mt. Sinai Hospital, Hartford, after thirty-seven weeks gestation, with multiple medical problems stemming primarily from congenital malformations. The child was transferred to the UCONN Health Center's Neonatal Intensive Care Unit, Farmington, with a condition referred to as a cloacal anomaly (deformed, imperforate anus); she remained in the hospital for approximately seventy-five days where numerous medical procedures were performed, including a colostomy and vesicostomy. Sharonda was discharged from the Health Center on March 3, 1989 and was immediately placed in a specialized foster home, the parents having executed a voluntary permission to place. The child required, and continues to require, an exceptionally great degree of specialized, skilled care; Sharonda has remained in the Hobson foster home, in Willimantic, continuously since March 3, 1989, and her enormous care requirements have been skillfully met by the devoted foster parent(s).
The child has had a number of readmissions to the Health Center during her continuing placement. Reconstructive surgical procedures to create vaginal, rectal, and urethal openings have been performed, as well as procedures to reverse the colostomy. The child remains incontinent, her condition requires regular catheterization, she receives continuing medication, and any significant abatement of Sharonda's very demanding care requirements is most unlikely. The child's need for highly specialized care CT Page 7873 has become even more acute in view of health problems which have developed in addition to her birth anomalies; additional medical difficulties include: a severe asthmatic condition, a seizure disorder, recurrent urinary tract infections, etc. In spite of her multiple afflictions, Sharonda is described as a quite active child (although easily frustrated and having a brief attention span), who was walking on schedule, and who attends the East-Conn Early Childhood Center in Columbia. More recently, the child has been referred for a developmental assessment relating to speech and language delays; an April 13, 1992 pediatric report attributes existing locution deficiencies to Sharonda's frequent hospitalizations and persistent ear infections (the child is currently receiving speech therapy). Both parents are residents of the city of Hartford. Prior to Sharonda's discharge from the Health Center NICU, the parents visited the child. Upon the infant's discharge from the Health Center, and her placement, the plan for the child contemplated the parents' visiting at the specialized foster home and receiving training from the foster mother (a registered nurse) regarding appropriate care for Sharonda S. In view of the location of the specialized foster home (Willimantic), DCYS stood ready to transport the parents or, at their option, to provide funds for transportation, in order to facilitate frequent and regular visitation. Respondent/father has not visited the child at all since placement; that is, since the child's discharge from the Health Center on March 3, 1989; Donald P. has never contacted DCYS to request visitation, has not communicated with DCYS (or the foster parent) regarding the child's condition, and has expressed no interest in, or concern for, the general welfare of Sharonda S. Respondent/father's whereabouts were unknown at the filing of the termination petition (11/6/91), and have remained unknown.
Respondent/mother, Michelle S., has continued to reside in Hartford with her three other children, Shainta Poteat, date of birth January 4, 1984; Donald Poteat, Jr., date of birth August 22, 1985; and, Andre Poteat, date of birth December 5, 1986. According to the testimony, respondent/mother last visited Sharonda on April 24, 1991, and that was the first time she had visited the child in approximately one year. On three occasions, DCYS provided Michelle S. with transportation funds for purposes of visitation, but on each such occasion, she expended the funds for her personal use and did not visit.[3] Michelle S. has not consistently contacted the Department to inquire of Sharonda S., has offered no permanent plan for the child, and neither parent has sent gifts or cards for the child, either through DCYS or directly to the foster home. On or CT Page 7874 about October 9, 1991, the DCYS social worker met with respondent/mother who stated that because Sharonda had "too many medical problems", she felt it would be best to have the child adopted by a family that could provide the proper and necessary care. On that date, respondent/mother signed a consent to terminate form; she stated to the worker that she had read the form and understood its content.[4]
The DCYS plan for this special child is permanency through the adoptive procedure. While the foster parents have displayed some ambivalence, the evidence indicates that they have expressed the wish to adopt. DCYS acknowledges that if the foster parents did not adopt, this child would be difficult to establish in an adoptive home. The little girl has received love and outstanding care in the foster home; it is the only home the child has ever known, having been placed there immediately upon discharge from the hospital, and there is a strong bond between the foster parents and child.
Adjudication
General Statutes Section 17a-112 (b) delineates the alternative grounds for termination of parental rights. In order to grant a petition to terminate, the court must determine that an alleged statutory ground has been established by "clear and convincing" evidence; such degree of proof is constitutionally mandated. As stated, this TPR petition was filed November 6, 1991.
a) Abandonment: Respondent/Parents
General Statutes Section 17-112 (b)(1) reads: "The superior court upon notice and hearing may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that termination is in the best interests of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . [t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . ."
Respondent/mother has not visited the child since April 24, 1992, and that was her first visit with the child in almost one year; respondent/father has not visited the child at all during the period of placement (placed in specialized foster care, March 3, 1989), and his whereabouts have remained unknown. During placement, there has been little, if any, contact with DCYS (or the foster parents) CT Page 7875 regarding the well-being of the child. No cards, gifts, or letters have been sent to Sharonda S. Neither parent has maintained a reasonable degree of interest, concern, or responsibility regarding the child's condition and/or welfare. Unlike the common-law principle of abandonment applicable under the neglect provision of General Statutes Section 46b-120, the standard respecting statutory abandonment under Section 17a-112 (b)(1) is "not whether the parents have shown some interest in their children"; rather "[c]ommon sense dictates that the parent's obligations toward . . . [a] child go further than a minimal interest." (Emphasis in original). In re Rayna M., 13 Conn. App. 23, 37 (1987).
The court hereby finds, applying a clear and convincing standard of proof, that petitioner has established abandonment as a statutory ground for the termination of the parental rights of Michelle S. and Donald P. to the child, Sharonda S.
b) Failure To Rehabilitate: Respondent/Mother
General Statutes Section 17a-112 (b)(2) provides, as follows: "The superior court upon hearing and notice . . . may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that termination is in the best interest of the child and that . . . with respect to a nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child . . ."
Sharonda S. was committed as an uncared for/specialized needs child on September 21, 1989. On February 7, 1991, respondent/mother appeared in court, with her attorney, agreed to an extension of the order of commitment effective March 21, 1991, and signed the CIP agreement form setting forth the court established expectations; an expectation was to visit the child as often as DCYS permitted, with the agency to assist with transportation. Similarly) on September 21, 1989, when the child was initially committed to the Department, respondent/mother, also executed, in the presence of her attorney, an agreement form containing an identical visitation expectation. Throughout the period of Sharonda S.'s placement, DCYS has complied with the agreement and has undertaken to facilitate visitation by the mother with the CT Page 7876 child. Respondent/mother last visited Sharonda S. on April 24, 1991; prior to that date she had not visited with the child for approximately one year. In view of respondent/mother's disinterest in visiting with the little girl, her not having undertaken to learn basic skills necessary for the care of the child, and based on what has transpired during the protracted period of this placement in terms of lack of interest in, and concern for, the child, it appears to the court that there has been a failure to rehabilitate, and, considering the child's age and highly specialized needs, that there is little to encourage a belief that within a reasonable time Michelle S. could assume a responsible position in the life of Sharonda S.
The court hereby finds, applying a clear and convincing standard of proof, that petitioner has established as a statutory ground for termination that Michelle S. is the parent of a child who has been found by the Superior Court to have been uncared for in a prior proceeding and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position in the life of the child.
c) No Ongoing Parent-Child Relationship:
Respondent/Parents
General Statutes Section 17a-121 (b)(4) provides the following: "The superior court upon hearing and notice . . . may grant . . . [a termination] petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to a nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of the parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. The statute involves the situation where a child has never known the parent and such a relationship never developed, or where the child has clearly lost that relationship so that despite its existence, it now has been completely displaced. See: In re Juvenile Appeal (Anonymous), 181 Conn. 638, 645-46 (1980). In re Shannon S.,41 Conn. Sup. 145, 158 (1989). A troubled relationship between the parent and child is not a basis for a termination of parental rights; however, in applying the statute, "common CT Page 7877 sense" is to be utilized and "bizarre results" are to be avoided. In re Juvenile Appeal (84-6), 2 Conn. App. 705,708-09 (1984).
Both Michelle S. and Donald P. have not had a day-to-day relationship, or any significant contact, with Sharonda S.; the child was discharged from the hospital three months after birth and immediately placed in the specialized care foster home, where the child has remained continuously. The mother last visited the child on April 24, 1991, and that was her first visit in approximately one year; respondent/father has not seen the child at all during the entire period of placement, and his whereabouts are unknown. Neither biological parent has been in a position of meeting, on a day-to-day basis, the physical, emotional, moral, and educational needs of this young child. The only home Sharonda S. has ever known since birth is that of the foster parents, and they have been the sole parental figures in the life of this child. The child, under the circumstances established in this case, would have no parental memories of, or parental attachment to, the respondents.
Sharonda S. has been in specialized foster placement since March 3, 1939, almost three and one-half years. The evidence has fairly established that the child continues (and will continue) to have medical needs requiring skilled, specialized day-to-day care. During the child's extended period of placement, there has been virtually no progress made (in terms of the parents learning and developing the basic, required care skills) relative to reunification of this child with the biological parents. Permanency, stability, devotion, and skilled, informed daily attention is consistent with Sharonda S.'s best interests. To allow the passage of additional time, in the circumstances of this case, for the establishment or reestablishment of a parent-child relationship, as statutorily defined, would be inconsistent with, and detrimental to, the best interest of this very special child.
It is hereby found, applying a clear and convincing standard of proof, that petitioner has established that there exists no ongoing parent-child relationship between the respondent/parents and Sharonda S., which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interests of the child.
Disposition CT Page 7878
General Statutes Section 17a-112 (b) allows the granting of a petition to terminate parental rights only upon a showing, based upon clear and convincing evidence, that termination is in the best interest of the child. Additionally, the court must consider the six factors outlined in Section 17a-112 (d). Evidence was last received in this case on May 7, 1992.[5]
Sharonda S. has been in foster placement since March 3, 1989, approximately three and one-half years. No progress has been made toward reunification, and neither parent has developed (or demonstrated interest in learning) even the most minimal skills needed to properly attend to this child's extremely demanding specialized medical needs. Sharonda S. has made significant progress in the devoted, loving, caring, nurturing home of the foster parents; she has received the proficient care and attention which her persistent medical difficulties require daily. The biological parents have shown no sustained interest in the child's well-being, in terms of ongoing communication with the Department, visitation, and contact with, or inquiry of, the foster parent(s). In the court's view, this little girl's best interests, at this point, clearly demand permanency and constancy: an adoptive home that can provide love, nurturing, stability, lasting devotion, and informed, specialized medical attention; such can be realized through the termination of parental rights, thereby freeing the child for adoption.
The court has considered, carefully, the factors enumerated in Section 17a-112 (d)(1) through (6), and hereby finds, applying a clear and convincing evidence standard, the following:
(1) DCYS offered transportation, or reimbursement for transportation, in order to facilitate visitation by the parents with this special needs child. Respondent/father did not visit at all during the period of placement; respondent/mother's last visit was April 24, 1991. On three occasions, the parents were provided, at their request, funds for visitation, but still did not visit with child. As a result of the failure to visit regularly, neither parent has developed any skills regarding the appropriate care of a child afflicted with very serious medical problems. The agency's efforts to facilitate visitation, and thereby assist these parents in learning through the foster mother the basic skills necessary to meet the demands of the child's medical condition, were undertaken in a timely manner. CT Page 7879
(2) Neither parent complied with the court established expectations regarding regular visitation with the child and keeping appointments with, or set through DCYS (parents missed their scheduled visitations even though they had been provided with funds for transportation). Respondent/father has not kept DCYS informed of his whereabouts (however, he was not a signatory on either of the expectation forms).
(3) There is nothing in the evidence presented indicating that the child has any feelings for, or emotional ties with, either of the respondent/parents. Since date of placement (on March 3, 1989), when child was less than three months old, there has been no contact whatsoever with respondent/father, and extremely limited contact with respondent/mother.
The evidence indicates the child has a strong attachment to the foster mother; the specialized foster parents are the only parents the child has ever known since leaving the hospital on March 3, 1989. The foster parents have done an extraordinary job of skillfully attending to Sharonda's special needs.
(4) Sharonda S. was born on December 19, 1988; she is three years and nine months of age. In view of the child's age, the fact that she has been in foster care almost her entire life, respondent/parents' lack of contact with the child, and the child's specialized needs, freeing Sharonda S. now for adoption is, in my view, entirely consistent with her best interests.
(5) Contact and visitation with the child since her placement at age three months has been, as stated, practically non-existent. There has been no regular contact or communication between the parents and the guardian, foster parent, or other custodian of the child. The evidence does not indicate that either biological parent has made efforts to adjust his/her circumstances, conduct, or conditions to render it in the best interests of this special needs child to return home in the foreseeable future; as stated, neither biological parent has made any effort to learn even the most fundamental skills necessary for the appropriate care and maintenance of this specialized needs child.
(6) There is no evidence that respondent/parents have been prevented from maintaining a meaningful relationship with Sharonda S. by the unreasonable act of any person or agency, or by their own economic circumstances. However, respondent/mother has stated that she could not visit Sharonda CT Page 7880 S. because of her care responsibilities respecting the three older children; however, it cannot be overlooked that during a period of approximately two years, she visited this child on just one occasion. There is no specific indication that any economic circumstances prevented the natural parents from visiting the child; as stated, the agency was committed to provide, or pay for, transportation.
Petitioner has met its burden of proof by clear and convincing evidence; the best interest of Sharonda S. will be served by freeing her for adoption, and by the provision of a loving, caring, nurturing, permanent home.
It is found, by clear and convincing evidence, that termination of parental rights is in the best interest of Sharonda S.; and, that with respect to both respondent/parents, over an extended period of time which is not less than one year, statutory grounds have existed for the termination of their parental rights.
The petition to terminate the parental rights of Michelle S. and Donald P. respecting the child Sharonda S. is hereby Granted; and, the Department of Children and Youth Services is appointed Statutory Parent for the said Sharonda S.
In accordance with General Statutes Section17a-112 (i), a case plan report shall be submitted to this court by the Commissioner within ninety (90) days, and thereafter as the court may require, but no less often than annually.
Mulcahy, J.