[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 9, 2001, the petitioner, the Commissioner of the Department of Children and Families, ("DCF"), filed a petition pursuant to C.G.S. § 17a-112, et seq. seeking termination of the parental rights of Keisha R. and Kirk R., Sr. to Kirk R., Jr.
Respondent Mother, Keisha R., consented to termination of her parental rights with regard to Kirk R., Jr. and to his half-siblings, Zakeya B., Tiquan B., and Felicia B. Respondent father, Kirk R. Sr., contests termination of his parental rights to Kirk R., Jr. Trial of this mater took place before this court on November 1, 2001 at the Regional Child Protection Session at the Middlesex J.D. For the reasons stated below, the court finds in favor of the petitioner.
The four statutory grounds for termination of parental rights alleged CT Page 903 against the respondent Kirk R., Sr. as to Kirk R., Jr. in the petition filed May 9, 2001 were (1) abandonment, in the sense that he has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child (C.G.S. § 17a-112 (j)(3)(A)); (2) that the child has been found in a prior proceeding to have been neglected or uncared for and the father has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, he could assume a responsible position in the life of the child (C.G.S. § 17a-112 (j) (3)(B)(i)); (3) that the child had been denied, by reason of an act or acts of parental omission or commission, i.e., that there had been sexual molestation or exploitation, severe physical abuse, or a pattern of abuse, the care, guidance or control necessary for the child's physical, educational, moral or emotional well-being (C.G.S. § 17a-112 (j)(3) (C)); and (4) that there is no ongoing parent-child relationship with respect to the father that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral or educational needs of the child, and to allow further time for the establishment of the parent child relationship would be detrimental to the best interest of the child. (C.G.S. § 17a-112 (j)(3)(D)).
The court finds that notice of this proceeding has been provided in accordance with the provisions of the Practice Book. The court further finds that the Child Protection Session of the Superior Court, Juvenile Matters Division, has jurisdiction over the pending matter and that no action is pending in any other court affecting custody of the child.
"The termination of parental rights is defined as the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his [or her] parent. . . . [As such, it] is a most serious and sensitive judicial action." (Citation omitted; internal quotation marks omitted.) In re Jonathan M.,255 Conn. 208, 231, 764 A.2d 739 (2001); In re Bruce R., 234 Conn. 194,200 (1995).
The termination of parental rights is governed by statute. C.G.S. § 17a-112. In a proceeding for termination of parental rights, the petitioner must prove a ground alleged in the petition, as of the date of filing the petition or the last amendment, by clear and convincing evidence. In re Joshua Z., 26 Conn. App. 58, 63 597 A.2d 842 (1991),cert. denied, 221 Conn. 901 (1992); In re Teresa S., 196 Conn. 18
(1985); Practice Book 33-1, et seq. Only one ground need be established for the granting of the petition. In re juvenile Appeal (84-BC),194 Conn. 252, 258 (1984); In re Karrlo K., 44 Conn. Sup. 101, 106
(1994), aff'd, 40 Conn. App. 73 (1996). CT Page 904
Termination of parental rights trials proceed in two stages: the adjudication and the disposition. In re Tabitha P., 39 Conn. App. 353,360, 664 A.2d 1168 (1995). The adjudicatory stage involves the issue of whether the evidence presented established by clear and convincing evidence the existence of one or more of the statutory grounds as of the date the petition was filed or last amended. In re Juvenile Appeal,(84-AB), 192 Conn. 254, 264 (1984). In this case, the petition was filed on May 9, 2001 and the court therefore considers evidence pertaining to matters up to that date as relevant in the adjudicatory stage.
If at least one pleaded ground to terminate is found, the court proceeds to the disposition stage. The court must consider whether the facts, as of the last day of trial, establish, by clear and convincing evidence, that termination is in the child's best interest. Procedurally, the evidence as to both adjudicatory and dispositional phases is heard at the same trial without first determining if the state has proven a statutory ground for adjudication before consideration of the dispositional question. State v. Anonymous, 179 Conn. 155, 172-173,425 A.2d 939 (1979); In re Juvenile Appeal (84-BC), 194 Conn. 252, 258,479 A.2d 1204 (1984); In re Nicolina T., 9 Conn. App. 598, 602,520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987); In reEmmanuel M., 43 Conn. Sup. 108, 113, 648 A.2d 904, aff'd,35 Conn. App. 276, 278, 648 A.2d 881, cert. denied, 231 Conn. 915,648 A.2d 151 (1994). In re Eden F., 250 Conn. 674, 688-89, 741 A.2d 873
(1999)." In re Quanitra M., 60 Conn. App. 96, 102, ___ A.2d ___ (2000).
I. FACTS
The Court makes the following findings, having considered the verified petition, the social study, the other documentary evidence, the testimony of Ms. Marangelo, a DCF social worker, and respondent father. The credible evidence admitted at trial supports the following facts by clear and convincing evidence.
Kirk R., Jr. was born on January 1995. Kirk has three older half-siblings, (Zakeya B., Tiquan B. and Felicia B.), and five younger siblings, with whom DCF has been involved.
There is a lengthy history of DCF involvement with this family. Initially, in February, 1994, Kirk Jr.'s two half-sisters, Zakeya and Felicia B. (born 9-5-90 and 12-3-93, respectively) were removed from the home when DCF invoked a 96 hour hold on both children due to allegations of lack of supervision. The children were returned to their mother under an order of protective supervision on February 22, 1995, shortly after Kirk was born. Mother and respondent father married in 1995. Additional children were born in 1996 (Shawn R.), 1997 (Tiana R.), and 1998 (Joshua CT Page 905 R.).[1] Throughout 1997 and 1998, DCF filed two motions for protective supervision on all the children. On September 14, 1998, DCF again invoked a 96 hour hold on behalf of Zakeya, Felicia, and Kirk R., Jr. after DCF had received a protective service referral from the children's school. The referral stated that Kirk, Jr. came to school and informed his teacher that his father had punched him in the mouth, splitting his lip and loosening a tooth. An Order of Temporary Custody issued on September 18, 1998. On September 30, 1998, another protective service referral was received from Child Guidance stating that when Kirk, Jr. was seen there for a crisis evaluation, he presented with a one and a half inch scar on his hand. The child reported that his father had hit him with a spoon and he bled. Numerous other protective service referrals were received on children in the home dating from 1994 and continuing through 2001 alleging severe abuse and chronic neglect. The referrals were received from law enforcement, medical providers, homeless shelters, schools and other individuals. One referral made after a home visit by a DCF worker alleged that upon arrival for the home visit, the worker found the door off the hinges and the house ransacked, with furniture upside down and the parents screaming at each other.
There were many instances of substantiated neglect throughout DCF's history with this family, including instances where the children (or some of them) were left unattended. On another occasion, mother had left a homeless shelter with Zakeya, (then 5 years old), Kirk (1 year old) and Shawn (3 weeks old) to buy milk at 9:30 a.m. At 9:30 p.m., the Norwalk Police Department transported her and the children back to the shelter. She reported that she had not fed the children all day. Another referral from one of mother's friends stated that the children had no beds and only limited food in the home. On another occasion, a medical provider reported that as an infant, Shawn was brought to the emergency room by ambulance based on concerns that he had stopped breathing. After the hospital made the decision to admit the child overnight for observation, mother took the baby and left the hospital without permission. Two days later when mother brought the child back for cold symptoms, the doctor noted that the child still had a large plastic tube in his chest left over from the hospital and that the child had not been bathed.
Zakeya, Felicia and Kirk, Jr. were adjudicated neglected and committed to the care and custody of DCF on May 17, 1999. The issues in the home were domestic violence, physical abuse, lack of supervision and chronic neglect. Kirk Jr.'s commitment was extended on March 31, 2000 and again on April 20, 2001.
Mother, Keisha R., voluntarily gave custody of Kirk's half-sibling, Tiquan B., (born 2-12-92) to her mother through the Probate Court when Tiquan was two years old. Tiquan was removed from that home on January CT Page 906 22, 1999 following reported incidents of physical abuse. On March 17, 1999, Tiquan was committed to DCF as a neglected child and has remained in DCF custody since that time.
After Zakeya and Felicia had been in DCF care, they disclosed that they had been sexually assaulted by respondent, their stepfather, Kirk R., Sr., father of Kirk R., Jr. Ultimately, criminal charges were brought against Kirk R., Sr., and his case proceeded to trial at which both Zakeya and Felicia testified. In December, 2000, he was convicted of two counts of Sexual Assault in the First Degree and two counts of Risk of Injury to a Minor. On April 6, 2001, respondent was sentenced to 40 years incarceration, suspended after 15 years to serve, and 35 years probation.
In June, 1999, respondent father was incarcerated pretrial on the sexual assault charges. He posted bond in June, 2000 and was released pending trial. During the time he was released, he was to reside with his mother. Although he was to have no contact with the four children then in the home, he was permitted supervised visitation with Kirk Jr. at a DCF office. DCF attempted to set up a weekly visitation schedule, but communication with respondent father was difficult. During the six months between June and December, 2000, he attended only one visit with Kirk, Jr. He testified that he called DCF three or four times to try to make arrangements to see his son and left voice-mail messages. DCF worker Marangelo testified that he may have called six times. She returned his calls and left messages with whomever answered the phone or on an answering machine. Respondent father acknowledged that his calls were returned, but that he was not home. He stated that he was given "excuses" from DCF worker Marangelo about when he could see his son. He did not send cards, letters or gifts to his son, Kirk, Jr. at any time. Although he stated that this was because DCF told him not to send anything, there was no credible evidence to support this claim. Although he stated that he did not have an address for Kirk Jr., he could have sent cards, letters or gifts to DCF.
Respondent father signed specific steps to facilitate reunification on May 17, 1999. Among other things, those steps required respondent to participate in individual and parenting counseling, including anger management, impulse control and domestic violence counseling, notify DCF of release from prison in advance, keep all appointments with DCF, and follow recommendations of service providers including services provided by the Department of Corrections. (Pet. Exhibit 3). Respondent father failed to comply with expectations regarding parenting classes and anger management. He was referred to certain service providers for parenting classes and anger management when he was not incarcerated, but he failed to contact those providers to begin services. Further, while he was CT Page 907 released, he did not keep all appointments with DCF and visited the child only once.
Kirk Jr., is a very troubled six year old child who is placed in a therapeutic foster home. He is extremely aggressive and has been diagnosed with Attention Deficit Hyperactivity Disorder, for which he takes medication. He has been hospitalized and has participated in partial hospitalization programs. He is difficult to manage and attends a special education school. He previously attended a special education preschool. As of November 1, 2001, he had been at the same foster home for two years and seven months. His foster home is well-equipped to meet his needs. He has bonded well with his foster parents who are committed to him and would like to adopt him.
Kirk, Jr. does not have positive feelings about his father. He knows Kirk Sr. is his biological father. When he discusses his father, however, he brings up only negative incidents, including times he was hit by his father, and flashbacks of domestic violence between his mother and his father. He has stated to the DCF worker that he knows his father is in jail because he had sex with his older sisters.
Respondent Kirk R., Sr. testified at trial. Although he is currently incarcerated serving his sentence, he maintains his innocence. He has filed an appeal and expects that his convictions will be reversed on appeal. He stated that he believes that the appeal process will take about two years. Although he stated that he did take parenting classes, as well as anger management, he could not identify the provider(s) of these services. He stated that Kirk Jr. lived with him and respondent mother from his birth until he was committed to the care and custody of DCF. He maintains that he did not cause his son's split lip, he loves his son, and would not do anything to hurt him. He conceded that initially he was not cooperative with DCF because he felt DCF unfairly hounded his family.
II. ADJUDICATION
Each statutory basis set out in C.G.S. § 17a-112 (j) is an independent ground for termination: The petitioner is required to prove one or more of the four grounds alleged in its petition by clear and convincing evidence. In re Baby Girl B., 224 Conn. 263, 618 A.2d 1
(1992).
A. Location and Reunification § 17a-112 (j)(1):
In order to terminate parental rights, DCF must prove, by clear and convincing evidence, the statutory element requiring "reasonable efforts CT Page 908 to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate." C.G.S. § 17a-112 (j)(1). "Although [n]either the word reasonable nor the word efforts is . . . defined by our legislature or by the federal act from which the requirement was drawn . . . [r]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted; citation omitted.) In re Mariah S.,61 Conn. App. 248, 255, ___ A.2d ___ (2000).
Specific steps were ordered as to respondent father on May 17, 1999. Approximately one month later, respondent was incarcerated on the criminal charges. He was released on bond from June through December, 2000, but did not comply with the specific steps during that six month period, or at any time.
While a respondent parent is imprisoned, DCF is generally excused from providing reunification services other than visitation. See generally Inre Roshawn R., 51 Conn. App. 44, 56-57, 720 A.2d 1112 (1998) (together with other factors, respondent's incarceration prevented DCF from providing reunification services). For a review of Superior Court cases applying this rule, see In re Destiny Q., Superior Court, Juvenile Matters, Child Protection Session, Docket No. U06-CP98-002230-A (Nov. 19, 2001, Levin, J.). Pursuant to C.G.S. § 18-81, the Commissioner of Correction is responsible for providing "treatment, vocational and academic education" programs to inmates incarcerated in Connecticut. There was no evidence that respondent availed himself of any treatment programs while incarcerated.
The Court finds that petitioner has proven by clear and convincing evidence that respondent father is unable to benefit from reunification efforts. He did not benefit from reunification efforts while he was released. Respondent father is now serving 15 years of a 40 year sentence for sexually assaulting Kirk Jr.'s two half-sisters. Even if his convictions are reversed on appeal, that process is expected to take two years, a time period which is far too long for six year old Kirk Jr. to endure in a state of limbo concerning Kirk Sr.'s availability to care for him.
B. Statutory Grounds for Termination
1. Abandonment: C.G.S. § 17a-112 (j)(3)(A)
"Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact CT Page 909 with the child, and demonstrates no concern for the child's welfare. Inre Juvenile Appeal (Docket No. 9489), 183 Conn. 11, 14, 438 A.2d 801
(1981)." In re Kezia M., 33 Conn. App. 12, 18, 632 A.2d 1122, cert.denied, 228 Conn. 915 (1993); In re Terrance C., 58 Conn. App. 389, 394
(2000). This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. Sporadic efforts are insufficient to negate the claim of abandonment. In re Roshawn R., 51 Conn. App. at 53. Indicia of interest, concern and responsibility include "attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support." In re Drew R., 47 Conn. App. 124, 129 702 A.2d 647
(1997). The test for determining abandonment of a child for purposes of termination of parental rights cases is not whether a parent has shown "some interest" in his or her child, but rather, whether the parent has maintained any reasonable degree of interest, concern or responsibility as to the child's welfare. In re Rayna M., 13 Conn. App., 23, 36,534 A.2d 897 (1987).
Imprisonment of a parent does not alone constitute abandonment of a child, but "inevitable restraints imposed by incarceration do not in themselves excuse failure to make use of available though limited resources for contact with a . . . child." In re Juvenile Appeal,187 Conn. 431 (1982); In re Deana E., 61 Conn. App. 185, 194 (2000),cert. denied, 255 Conn. 941 (2001). A parent's incarceration is no defense to an abandonment allegation. The parent has an affirmative obligation to take advantage of visitation services. In re Roshawn R.,51 Conn. App. 44 (1998).
Certainly respondent father was subject to those limitations and restrictions inherent in incarceration. See In re Shane P.,58 Conn. App. 244, 256 (2000) (and cases cited therein). Here, however, even while not incarcerated, respondent father did not take advantage of visitation services, meeting with his son only once and calling DCF only four to six times. See In re Deana E., et al., 61 Conn. App. at 185. Moreover, he did not complete any domestic violence counseling (even when not incarcerated) and although he testified that he took parenting and anger management classes, he could not remember the name of the program. There was no evidence that he took advantage of any such services while incarcerated.
Respondent did not send any cards, letters or gifts to Kirk Jr. either when incarcerated or while on pretrial release. Other than the four to six phone calls he made while released, he did not call DCF to inquire about his son's well-being. Although respondent took the position that DCF told him not to send anything to Kirk, Jr., there was no credible CT Page 910 evidence to support this claim. In any event, respondent still could have contacted DCF to inquire about his son's well-being. DCF attempted to schedule weekly supervised visitation with Kirk Jr. Respondent only attended one visit. Further, while he was released, he did not keep all appointments with DCF or follow up with referrals for parenting and anger management.
Respondent father made at best only a minimal effort to contact his son. He did not maintain a reasonable degree of interest, concern or responsibility for the welfare of the child. His sporadic efforts do not amount to a reasonable degree of interest, concern or responsibility for the welfare of the child. The court therefore concludes that this ground has been established by clear and convincing evidence.
2. Failure to Rehabilitate: C.G.S. § 17A-112(j)(3)(B)(i)
The Court finds that the petitioner has established by clear and convincing evidence that respondent father Kirk R., Sr. has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, he could assume a responsible position in the life of his child.
"`Personal rehabilitation as used in [Section 17a-112] refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [The statute] requires the trial court to . . . find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life.' (Citations omitted; internal quotation marks omitted). In re Eden F., [250 Conn. 674, 706, 741 A.2d 873
(1999)]. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue. (Internal quotation marks omitted). In reShyliesh H., [56 Conn. App. 167, 180, 743 A.2d 165 (1999)]." In re SarahAnn K., 57 Conn. App. 441, 448, ___ A.2d ___ (2000). See also In reAshley S., 61 Conn. App. 658, 665, ___ A.2d ___ (2001); In re Amneris P.,66 Conn. App. 377, 384-85, ___ A.2d ___ (2000).
Respondent father has been unable to bring himself into a position in which he could provide adequate care for this child with special needs. He acknowledged that he was unaware of any of Kirk's problems prior to the trial testimony and did not have a plan to address them. Respondent father conceded that he was not in a position to provide adequate care for Kirk, Jr., at least for the next two years, and, if his appeal is CT Page 911 unsuccessful, for the next 15 years, by which time Kirk Jr. will have reached the age of 21.
The Court finds that the petitioner has established by clear and convincing evidence that respondent father Kirk R., Sr. has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and special needs of this child, he could assume a responsible position in the life of his child. Respondent father was offered services to assist him with reunification. Specific steps to facilitate reunification were ordered by the Court on May 17, 1999, (Exhibit 3), but respondent father was largely noncompliant. He did not complete parenting classes, anger management or domestic violence counseling. He did not keep all appointments with DCF and visited his son only once. Rehabilitation must be foreseeable within a reasonable time. In re Sheila J.,62 Conn. App. 470, 479-80 (2001). Here, the respondent was no better able to care for his son as of the adjudicatory date that he was when Kirk came into DCF's care. Thus, the court finds by clear and convincing evidence that respondent father has not brought himself into a position in which he can provide adequate care for Kirk R., Jr. and such rehabilitation is not foreseeable within a reasonable time.
3. Act of Commission or Omission: C.G.S. § 17a-112 (j)(3)(C)
The third ground alleged in the petition for termination is an act of parental omission or commission. The statute provides that a petition may be granted if the court finds by clear and convincing evidence that : "the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control, necessary for his physical, educational, moral or emotional well-being." C.G.S. §17a-112 (j)(3)(C). "There is nothing in this clear statutory language that limits the acts of commission or omission to the serious physical injury of a child, rather than the serious emotional injury of a child."In re Sean H., 24 Conn. App. 135, 144 (1991). The petition alleges that the respondent committed sexual molestation and exploitation, severe physical abuse or a pattern of abuse. Although Kirk, Jr. was not the victim of the sexual assault charges for which respondent stands convicted, he lived in the home with his half-sisters who were sexually abused and he himself was physically abused by respondent. Respondent subjected Kirk, Jr. to an atmosphere where the children in the home were severely neglected, where Kirk was physically abused and neglected and where other children in the home were sexually abused.
In this case, acts of parental omission and commission combined to deny this child the care, guidance, and control necessary for his physical, educational moral and emotional well-being. The severe neglect that Kirk CT Page 912 and the other children were subjected to constituted acts of parental omission and the physical abuse suffered by Kirk, together with the sexual assault of his half-sisters, constituted acts of parental commission that denied Kirk the care, guidance and control necessary for his well-being.
The presence of battering in the home has a detrimental effect on children. Knock v. Knock, 224 Conn. 776 (1993). In re Sean H.,24 Conn. App. 135, the Appellate Court recognized that emotional injury constitutes an act of omission or commission. Here, respondent father engaged in a pattern of physical and emotional abuse and neglect of Kirk, Jr. and sexually assaulted Kirk's two older half-sisters, Zakeya and Felicia (who were then 8 and 5) while Kirk was in the home. As set forth in In re Juvenile Appeal, (84-6) 2 Conn. App. 705, cert. denied.195 Conn. 801 (1985), "In striking at the heart of the family, the respondent demonstrated total disregard for the impact of his actions upon the emotional well-being of his [child.]" Similarly, by sexually assaulting Kirk's half-sisters and physically and emotionally abusing Kirk and others in the home, respondent father struck at the heart of this family. Thus, the court finds by clear and convincing evidence that respondent father denied Kirk Jr., by reason of acts of parental commission and omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being.
4. No Ongoing Parent-child Relationship: C.G.S. § 17A-112(j)(3)(D):
This ground is established when there is no ongoing parent-child relationship with the parent, which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment of the parent-child relationship would be detrimental to the best interest of the child.
No ongoing parent-child relationship contemplates a situation in which, regardless of fault, a child either has never known their parent, or that no relationship has ever developed between them, or that the child has lost that relationship so that despite its former existence it has now been completely displaced. In re Juvenile Appeal (Anonymous),181 Conn. 638, 645-46 (1980); In re John G., 56 Conn. App. 12, 22,740 A.2d 496 (1999). In any case, "the ultimate question is whether the child has no present memories or feelings for the natural parent." In reJuvenile Appeal, (Anonymous), 177 Conn. 648, 670 (1979). The mere recognition of an individual as a parent will not defeat this ground. Inre Juvenile Appeal (84-6), 2 Conn. App. 705, 708-09 (1984), cert.denied, 195 Conn. 801 (1985). The presence or absence of positive CT Page 913 feelings on the part of the child is determinative. In re Shane P.,58 Conn. App. 234, 240 (2000).
In the adjudicatory phase, the petitioner must establish (1) that no ongoing parent-child relationship exists; and (2) that the allowance of further time for the establishment of such a relationship would harm the interests of the child. In re Jonathan G., 63 Conn. App. 516, 525
(2001).
The Court finds by clear and convincing evidence that there is no ongoing parent-child relationship between the child Kirk Jr. and respondent father. Although respondent did visit the child once in 2000 and did make some phone calls to DCF to attempt to arrange visitation, that is not sufficient to maintain a parent-child relationship. Kirk R., Jr., who has been in a therapeutic foster home after having been subjected to neglect and abuse, does recognize respondent as his biological father, but would not seek comfort from him or go to him to have his needs met. Although he has present memories of him, those memories are not positive and consist of memories of being hit and of domestic violence between respondent and Kirk's mother. Although respondent father may be well-intentioned to the extent that he expresses his love for his son and a desire to care for him when he can, the fact remains that he has not been a part of his son's life since 1999. As a result of his own criminal conduct, which led to his lengthy incarceration, respondent father has rendered himself unavailable to serve as a parent for Kirk. See In re Shane P., 58 Conn. App. at 241. Even when he was not incarcerated, he did not make more than sporadic efforts to maintain a relationship with Kirk. Respondent father is not in a position to meet on a day-to-day basis the special physical, emotional, moral or educational needs of this child. In re Jonathan G.,63 Conn. App. 525. By clear and convincing evidence, the court finds that as of the adjudicatory date, there was no ongoing parent-child relationship between father and son.
The court further finds by clear and convincing evidence that to allow respondent father further time for the establishment of a parent-child relationship with his son would be detrimental to the best interest of the child. Kirk is now 6 years old and has many special needs. His extreme aggression and his ADHD, which have required his hospitalization and partial hospitalization make him a difficult child to manage. His father was convicted of sexually assaulting his two half-sisters. He has been in a therapeutic foster home since 1999. By his own testimony, respondent father will be unable to provide for Kirk for at least two years, and then only if his appeal is successful. In view of Kirk, Jr.'s needs, it would be detrimental to him to allow this substantial additional time in which respondent father could attempt to reestablish a CT Page 914 parent-child relationship.
Thus, the Court finds that the petitioner has proven the statutory grounds for termination by clear and convincing evidence.
III. DISPOSITION
As to the dispositional phase of this hearing on the petition for termination of parental rights, the court has considered the evidence and testimony related to circumstances and events up to and including November 1, 2001, the date upon which the evidence in this matter was completed.[2] With respect to the seven written factual findings required by general statutes § 17a-112 (k), each of which the court has considered in determining whether to terminate parental rights under this section, the court makes the following findings:
(1) As to the timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with respondent, the court finds by clear and convincing evidence that services were offered and that respondent father was unable to benefit from reunification efforts.
(2) As to whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended, the court finds by clear and convincing evidence that Kirk R., Sr. has demonstrated that he is unable or unwilling to benefit from reunification efforts. § 17a-112 (c)(1). The action of DCF to institute termination proceedings is consistent with the federal law designed to eliminate foster care drift and secure permanent placement for children in foster care.
(3) As to the extent to which all parties have fulfilled their obligations under the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, the court finds that specific steps were ordered as to. respondent father which required, among other things, parenting, anger management and domestic violence counseling. Respondent father did not follow through with the recommended service providers. Although he stated that he received services from a different provider, he could not recall where he received the services and there was no other evidence that he received the services. Similarly, he did not keep all appointments with DCF. DCF has fulfilled any obligations it had in order to facilitate reunification of the family.
(4) As to the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person CT Page 915 who has exercised physical cafe, custody or control of the child for at least one year and with whom the child has developed significant emotional ties, the court finds by clear and convincing evidence that Kirk Jr. does not have a positive bond with respondent father. He has only negative feelings and no emotional ties. During the time respondent was released on bond, he had extremely limited contact with Kirk, Jr., visiting with him only once. Although Kirk does have memories of his father, the memories are negative and include flashbacks of incidents of physical abuse and domestic violence between his parents. Kirk has stated that he knows his father is in jail because he had sex with his older half-sisters. Moreover, the sisters have stated that this child was present on some occasions when they were abused by their stepfather. Kirk Jr. recognizes respondent as his father, but would not seek comfort from him or go to him to have his needs met.
Kirk Jr.'s mother consented to termination of her parental rights and has acknowledged that she is unable to handle his special needs. Kirk Jr. knows his mother and has had visitation with her.
Kirk Jr. has strong emotional ties to his foster parents who are committed to him and who have expressed a desire to adopt him. He has been with that family for over 2 1/2 years, since March, 1999. The evidence reveals that he has adjusted well to his surroundings and to his foster family. The Court finds that the foster parents are providing the physical, emotional and educational support this child needs.
(5) As to the age of the child, the court finds that Kirk is 6 years of age. The Court further finds, as shown by clear and convincing evidence, that this child requires stability of placement and continuity of care and that the child's attorney recommends termination.[3]
(6) As to the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; the court finds by clear and convincing evidence that respondent father has made some efforts to maintain contact with the child, but that those efforts have been extremely limited. Those efforts were limited, in part, by his incarceration which resulted from his own criminal conduct. As a result, father has maintained very limited contact. The court further finds that respondent has been unable to make realistic and sustained efforts to conform his conduct to even minimally CT Page 916 acceptable parental standards. Giving him additional time would not likely bring his performance, as a parent, within acceptable standards sufficient to make it in the best interests of the child to be reunited.In re Luis C., 210 Conn. 157 (1989); In re juvenile Appeal, 183 Conn. 11,15 (1981). This is particularly true here where respondent father's own testimony established that he could not provide for Kirk Jr. for at least two years, and then only in the event that his appeal from his criminal conviction is successful.
(7) As to the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent, the court finds by clear and convincing evidence that no unreasonable conduct by the child protection agency, foster parents or third parties has prevented a meaningful relationship between father and son. DCF took steps to attempt reunification. Once the allegations of sexual assault were made and the respondent was incarcerated on those charges, DCF's responsibilities with regard to services diminished. The agency did continue, however, to make referrals for services once respondent was released and attempted to provide supervised weekly visitation.
Further, while the respondent's financial means were limited, economic factors did not prevent regular, continuing contact with the child. No unreasonable conduct by the child protection agency is noted.
With respect to the best interests of the child contemplated by C.G.S. § 17a-112 (j)(2), by clear and convincing evidence, and based upon all of the foregoing, the court finds that termination of the parental rights of Kirk R., Sr. is in the best interest of the child Kirk R., Jr. The court also finds that termination of the parental rights of respondent mother, Keisha R., is in the best interest of Kirk R., Jr. Keisha R. consented to termination of her parental rights as to Kirk R., Jr. and conceded that she was not in a position to provide adequate care for this child with special needs. These findings are made after considering the totality of circumstances including the child's sense of time and the child's need for a secure and permanent environment. The Court acknowledges the quality of care that Kirk Jr. is receiving in the therapeutic foster home which is able to address his specialized needs and his attachment to foster parents.
It is accordingly, ORDERED that the parental rights of Kirk R., Sr. and Keisha R. are hereby terminated as to the child Kirk R., Jr. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent for Kirk R., Jr. for the purpose of securing an adoptive family or other permanent placement for the child. CT Page 917
A permanency plan shall be submitted within 30 days of this judgment, and that such further reports shall be timely presented to the court as required by law.
Judgment may enter accordingly.
It is so ordered this 16th day of January, 2002.
Jongbloed, J.